# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Metzger v. Country Mutual Insurance Co*, 2013 IL App (2d) 120133

---

| | |
|---|---|
| Appellate Court Caption | JEFFREY L. METZGER, Plaintiff and Counterdefendant-Appellee, v. COUNTRY MUTUAL INSURANCE COMPANY, Defendant and Counterplaintiff-Appellant (Tricia L. Mackie, as Independent Administrator of the Estate of Brian J. McKee, Deceased, and McKee Custom Masonry, Defendants). |
| District & No. | Second District<br>Docket No. 2-12-0133 |
| Filed | March 21, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a collision in which plaintiff's vehicle was struck by a truck personally owned by the driver, who used the truck in his business, the trial court erred in entering summary judgment for plaintiff declaring that the truck was covered under the business policy issued by defendant, since the business policy provided coverage for any "non-owned auto," the policy provided that a covered vehicle is neither owned, leased, hired nor borrowed, the truck involved in the accident was titled in the driver's name, and it was "borrowed" by the business, and therefore, under those circumstances, it was not a "non-owned" vehicle for purposes of the business policy, and defendant insurer had no duty to defend or indemnify. |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 10-MR-145; the Hon. Kurt A. Klein, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on Appeal      Keith G. Carlson, of Carlson Law Offices, of Chicago, for appellant.

Richard L. Turner, of Turner Law Offices, of Sycamore, for appellee.

Panel      JUSTICE BIRKETT delivered the judgment of the court, with opinion

Justices Hutchinson and Schostok concurred in the judgment and opinion.

## OPINION

¶ 1      Defendant Country Mutual Insurance Co. appeals from the grant of summary judgment in favor of plaintiff, Jeffrey L. Metzger, on his complaint for a declaratory judgment construing an insurance policy issued by defendant. Defendant had filed a cross-motion for summary judgment, which the trial court denied. For the following reasons, we reverse and remand for the trial court to enter summary judgment in favor of defendant.

¶ 2      I. GENERAL BACKGROUND

¶ 3      In September 2009, a vehicle driven by plaintiff collided with a Ford F-250 driven by Brian McKee. At the time, Brian was vice-president of McKee Custom Masonry (McKee Masonry), a subchapter S corporation whose sole shareholders were Brian and his wife, Tricia McKee. Brian was fatally injured in the accident. Subsequently, plaintiff filed a tort lawsuit against both McKee Masonry and Brian's estate. No pleadings from that lawsuit are in the record. According to plaintiff's complaint in the present action, the underlying complaint alleges "in essence" that

"on September 21, 2009, [Brian], acting individually and as agent of [McKee Masonry], was operating his personally owned [Ford F-250] in a northernly direction on Hinckley Road, near the intersection of Perry Road, in the Township of Pierce, County of DeKalb, State of Illinois, and that [Brian] failed to stop at the stop sign on Hinckley Road at the intersection of Perry Road, and to yield to traffic on Perry Road, pulling out directly in front of the path of the vehicle being driven by [plaintiff], causing the vehicles to violently collide."

Defendant does not contest this representation.

¶ 4      Defendant, for its part, represents on appeal, consistent with its submissions below, that "the defense for [McKee Masonry and Brian's estate] was undertaken by State Farm, which had issued a policy of automobile insurance, specifically insuring the truck or motor vehicle driven by [Brian] at the time of the accident." Plaintiff does not dispute this. We point out, however, that the State Farm policy is not in the record. Moreover, while there are other documents in the record suggesting that Brian was a named insured under the State Farm

policy, nothing indicates whether the Ford F-250 was specifically named in the policy as a covered vehicle. There also is no documentation in the record to confirm that State Farm is defending the underlying lawsuit, or that the suit is still pending as of this appeal. Since, however, the parties appear to be in agreement as to these background facts, and the proceedings below seem consistent with their representations, we accept them as true for purposes of our review.

¶ 5    The present action was commenced on October 4, 2010, when plaintiff filed a complaint for a declaratory judgment that policy number AM 9004552 000 (the business policy), on which McKee Masonry was the named insured, provided liability coverage for the Ford F-250 with regard to the September 2009 accident. The business policy was in effect at the time of the accident, and it covered, as we explain in more detail below, any "non-owned" vehicle operated in the business. Plaintiff sought a declaration that the Ford F-250 was a "non-owned" vehicle. Plaintiff further requested that defendant, "by virtue of the determination prayed for," be ordered "to undertake defense at its expense" of the underlying tort lawsuit, "and that the limits of the [business policy] be appli[ed] to any judgment, settlement, compromise or otherwise of said suit within the said limits of the [business policy]."

¶ 6    Defendant filed an answer and, later, a motion to dismiss. The court denied the motion to dismiss. Plaintiff subsequently moved for summary judgment on the ground that there was no dispute of material fact that the Ford F-250 was a "non-owned" vehicle under the business policy.

¶ 7    Defendant filed a counterclaim for declaratory judgment and, later, a cross-motion for summary judgment. In the motion, defendant asserted first that, since State Farm was defending the underlying lawsuit, the current suit presented "only the question of indemnity," and the "duty to defend" was "not even an issue." (Presumably, defendant was suggesting that State Farm's current involvement meant that defendant would not need to undertake a defense even if there appeared to be coverage under the business policy.) Citing *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278 (2001), defendant argued further that the issue of indemnity was "premature" because there was yet no judgment in the underlying action. Second, defendant argued that the undisputed facts established that the Ford F-250 was not a "non-owned" vehicle.

¶ 8    At the hearing on the motion, plaintiff agreed with defendant that any coverage under the business policy would be "secondary or excess."

¶ 9    The trial court granted summary judgment for plaintiff. First, the court agreed that any coverage under the business policy would be "secondary or excess," but nonetheless held that defendant had both a duty to defend and a duty to indemnify. Second, the court held that, as a matter of law, the Ford F-250 was a "non-owned" vehicle under the business policy.

¶ 10    Defendant timely appeals.


¶ 11                                II. ANALYSIS
¶ 12            A. Principles Governing Review of Summary Judgment Rulings
¶ 13    The purpose of summary judgment is not to try a question of fact, but to determine if one

exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *Adams*, 211 Ill. 2d at 43. Summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt. *Id.* In appeals from summary judgment rulings, the standard of review is *de novo*. *Id.*

¶ 14    "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. "However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Id.*


¶ 15                              B. Duty to Defend/Duty to Indemnify

¶ 16    This is an action for a declaratory judgment on insurance coverage. The suit is brought by neither the insurer nor the insured, but by a third party injured through the alleged fault of the insured. There is currently pending a tort suit by that third party against the insured based on the same incident.

¶ 17    The court below held that defendant has both a duty to indemnify and a duty to defend. The court erred on both points.

¶ 18    In *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141 (2004), the supreme court explained that the duty to indemnify and the duty to defend

> " 'differ in their triggering. Whereas the duty to indemnify can arise only after damages are fixed in their amount [citations], the duty to defend may arise as soon as damages are sought in some amount [citations].' " *Id.* at 158 (quoting *Certain Underwriters at Lloyd's of London v. Superior Court*, 16 P.3d 94, 102 (Cal. 2001)).

*Central Illinois Light* states preconditions for when the duties "arise." Other cases appear to have the same issue in mind, but frame it in terms of when the duties are "ripe" for adjudication. For instance, the court in *Gregory v. Farmers Automobile Insurance Ass'n*, 392 Ill. App. 3d 159, 161 (2009), said:

> "[A]lthough a declaratory judgment action brought to determine an insurer's duty to defend is ripe upon the filing of a complaint against the insured, a declaratory judgment action brought to determine an insurer's duty to indemnify an insured is not ripe for adjudication until an insured becomes legally obligated to pay the damages in the underlying action."

Here, the duty to defend is ripe for adjudication because a complaint has been filed against the insured.

¶ 19    "To determine whether an insurer has a duty to defend, the court must compare the allegations in the underlying complaint to the relevant provisions of the insurance policy and liberally construe both in the insured's favor." *American Family Mutual Insurance Co. v. Niebuhr*, 369 Ill. App. 3d 517, 521 (2006). "If the underlying complaint's allegations fall within, or potentially within, the policy's coverage, the insurer is obligated to defend its insured." *Id.* "The duty to indemnify arises only if the insured's activity and the resulting damage actually fall within the policy's coverage." *Id.* "Because the duty to defend is broader than the duty to indemnify, if an insurer owes no duty to defend, it owes no duty to indemnify." *Westfield National Insurance Co. v. Continental Community Bank & Trust Co.*, 346 Ill. App. 3d 113, 124 (2003).

¶ 20    Thus, if there is even potential coverage, the insurer must assume the defense of the underlying lawsuit, unless the insurer is secondary or excess, in which case the insurer's duty to defend will not arise until the limits in the primary policy are reached. See *American States Insurance Co. v. Liberty Mutual Insurance Co.*, 291 Ill. App. 3d 336, 339 (1997); *Northbrook Property & Casualty Insurance Co. v. United States Fidelity & Guaranty Casualty Co.*, 150 Ill. App. 3d 479, 485 (1986). If, however, there is not even potential coverage, the insurer, whether primary or secondary, need not defend the underlying lawsuit.

¶ 21    Here, the parties agree that the business policy is secondary or excess. While we could hold on this basis that there is no present duty to defend, and so defer the issue of coverage, we choose instead to reach the issue of coverage, which is ripe for our consideration since the insured under the business policy has been sued.

¶ 22                              C. "Non-owned" Vehicle

¶ 23    For the following reasons, we hold that the business policy does not even potentially cover the Ford F-250 given the circumstances surrounding the accident. Accordingly, there neither is, nor could there be, a duty to defend or duty to indemnify.

¶ 24    Defendant argues that the trial court erred in holding that the Ford F-250 was a "non-owned" vehicle under the business policy. We agree.

¶ 25    "The interpretation of an insurance policy is a question of law that may properly be decided on a motion for summary judgment." *DeSaga v. West Bend Mutual Insurance Co.*, 391 Ill. App. 3d 1062, 1066 (2009). "When interpreting an insurance policy or any other contract, the [court's] primary goal is to give effect to the intent of the parties as expressed in the agreement." *Id.* "If the terms of an insurance policy are clear and unambiguous, they must be given their plain and ordinary meaning and enforced as written, unless to do so would violate public policy." *Id.* "Insurance policies are to be liberally construed in favor of the insured [citation] and in favor of coverage." *Id.* "Any ambiguity that exists in the language of a policy must be resolved against the insurer, since the insurer drafted the policy." *Id.* "In addition, any provision in a policy that limits or excludes coverage must be construed liberally in favor of the insured and against the insurer." *Id.*

¶ 26    We note that the trial court, in deciding the issue of coverage, considered not only the allegations of the underlying complaint (as represented by the parties, since that complaint is not in the record) and the business policy, but also the three depositions attached to

plaintiff's motion for summary judgment. As in the court below, both parties rely on the deposition testimony for their respective positions. A court may look beyond the allegations of the underlying complaint in determining the existence of a duty to defend. See *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 458-62 (2010); *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 304-05 (1983).

¶ 27    The pertinent facts are undisputed. We begin with the terms of the business policy. The named insured is McKee Masonry. As relevant here, the business policy provides coverage for

" 'bodily injury' or 'property damage' arising out of the use of any 'non-owned auto' in your business by any person."

" 'Non-Owned Auto' " is defined as

"any 'auto' you do not own, lease, hire or borrow which is used in connection with your business."

¶ 28    Other relevant documentary evidence consists of (1) a November 13, 2007, invoice for the purchase of the Ford F-250, which lists "Brian McKee" as purchaser; (2) a certificate of title for the Ford F-250, issued December 17, 2007, naming "Brian McKee" as owner; and (3) a tax form, dated December 13, 2008, listing the Ford F-250 as among the business assets of McKee Masonry, and designating the truck as having 100% "business use." As noted above, McKee Masonry is a subchapter S corporation for federal taxation, and its sole shareholders were Brian and Tricia.

¶ 29    There was deposition testimony on the Ford F-250 and its use in McKee Masonry's business.

¶ 30    Tricia testified that she accompanied Brian when he purchased the Ford F-250 in November 2007. When Tricia was asked if she and Brian discussed whether to place the title in the name of McKee Masonry or in one or both of their names, Tricia replied, "The only discussion was regarding putting it in Brian's name alone and establishing the loan in Brian's name alone because his credit score wasn't as high as mine." Brian and Tricia decided that the Ford F-250 would be purchased and titled in Brian's name. They intended, however, that the Ford F-250 would be used "solely" as "a work truck for the business," McKee Masonry. According to Tricia, Brian kept his business records and work equipment in the Ford F-250. McKee Masonry was operated from the family home, with some equipment being stored off-site.

¶ 31    Tricia testified that the purchase of the Ford F-250 also involved a trade-in, namely, another Ford truck. This older Ford was titled in both Tricia's and Brian's names and had been used "exclusively in business, not for other purposes." The trade-in allowance of $5,000 was used as a down payment on the Ford F-250, and the remainder of the purchase price was financed. McKee Masonry had its own checking account as well as debit and credit cards. All loan payments on the Ford F-250 were made from the business checking account because the truck "was intended to be used by the business." Repair expenses were also paid from the checking account. Gas for the truck was purchased with the business's credit or debit cards. The Ford F-250 was designated as a 100% business asset for tax purposes, and Brian and Tricia kept track of business expenses associated with the truck in order to claim tax

deductions.

¶ 32 Tricia further stated that the family had vehicles that were for personal or nonbusiness use. These vehicles and the Ford F-250 were insured by the same carrier, State Farm, but the coverage for the F-250 was billed separately and paid by the business.

¶ 33 Tricia testified that Brian was en route in the F-250 to a masonry job when the accident that claimed his life occurred.

¶ 34 Bryan Penrod, an employee of McKee Masonry at the time of the accident, testified that Brian used no vehicle for work other than the Ford F-250, except when it was being repaired. Brian kept his tools, equipment, and work documents in the truck.

¶ 35 In the brief statement it gave in ruling on the issue of coverage, the trial court focused on the issue of ownership of the Ford F-250. The court asked, "[T]hey had insurance personally on the vehicle[,] where is the intent to transfer [ownership] or say that the corporation owns it?" The court concluded that Brian, not McKee Masonry, owned the F-250.

¶ 36 We hold that the Ford F-250 was not a "non-owned" vehicle under the business policy. Under that policy, a covered vehicle is neither (1) "own[ed]," (2) "lease[d]," (3) "hire[d]," nor (4) "borrow[ed]" by McKee Masonry. The trial court specifically found that the truck was not "own[ed]" by McKee Masonry but did not consider, at least expressly, whether the truck was nonetheless "lease[d]," "hire[d]," or "borrow[ed]" by McKee Masonry. While the parties argue at length over whether McKee Masonry effectively owned the Ford F-250 though it was titled in Brian's name, we need not address that controversy, because, assuming that Brian, not McKee Masonry, owned the Ford F-250, the undisputed evidence shows that the corporation borrowed it from Brian.

¶ 37 To explain, we note that the business policy defines neither "lease," "hire," nor "borrow." "Where a term in an insurance policy is not defined, we afford that term its plain, ordinary and popular meaning, *i.e.*, we look to its dictionary definition." *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 436 (2010). In ascertaining the meanings of these terms, we note that McKee Masonry was a legal entity that existed independently of Tricia and Brian, its sole shareholders. Thus, it was analytically and legally possible for Brian, in his personal capacity as owner of the truck, to convey possession and use of it to McKee Masonry. "Lease" and "hire" both involve payment for services or use. See Black's Law Dictionary 735, 898 (7th ed. 1999) ("hire" is "[t]o engage the labor or services of another for wages or other payment," and "lease" is "[a] contract by which a rightful possessor of personal property conveys the right to use that property in exchange for consideration"). An item of personal property can be "borrow[ed]," however, without a promise of payment. See Black's Law Dictionary 178 (7th ed. 1999) ("borrow" is "[t]o take something for temporary use"); Webster's Third New International Dictionary 256 (1993) ("borrow" is "to receive temporarily from another, implying or expressing the intention either of returning the thing received or of giving its equivalent to the lender: obtain the temporary use of"). Here, there is no evidence that McKee Masonry paid or promised consideration for its use of the Ford F-250. Therefore, we cannot conclude that the use constituted a lease or hire. The use did, however, constitute borrowing. On whether the F-250 was borrowed, plaintiff says:

"The truck was not *** borrowed by the corporation, in that [Brian] had the sole use of

the truck, though he used it for business purposes, and there is no evidence that any employee of the corporation used the vehicle for corporate purposes or in any other way borrowed *** the truck on behalf of the corporation. The truck involved was simply a vehicle owned by [Brian] individually that he used in his business ventures, whether to do masonry work or plow snow."

Defendant responds:

"If a vehicle is owned by another and regularly used and then returned to that individual, that is the precise definition of borrow. *** [A]t a minimum, [the Ford F-250] was borrowed, entitling [defendant] to summary judgment."

¶ 38    Plaintiff emphasizes that Brian had "sole use of the truck," but ignores the reality that Brian's use of the truck for business was actually the corporation's use of it. We note further that the definition of "borrow" that we are using does not require that the lending arrangement be formalized, which apparently it was not here. Also, though the lending arrangement was, apparently, continuous from the purchase of the Ford F-250 in 2007 to the accident in 2009, Brian retained title to the vehicle, implying that the business was still using it at his pleasure. We agree with the Court of Appeals of Oregon, which, in construing an identical definition of "non-owned," held that "[f]requency of use is *not* determinative–or even pertinent" in determining whether a vehicle has been "borrowed." (Emphasis in original.) *Gold v. Casserly Landscape, Inc.*, 812 P.2d 33, 34 (Or. Ct. App. 1991) (*Gold II*), *modifying* 801 P.2d 844 (Or. Ct. App. 1990) (*Gold I*). In the *Gold* cases, an employee of a corporation "regularly used" for business purposes a vehicle titled in the name of an officer and stockholder of the corporation. *Gold I*, 801 P.2d at 846. Applying the "non-owned" vehicle provision in the corporation's insurance policy, the appellate court remanded for the trial court to make factual findings on whether the vehicle was "borrow[ed]" from the corporation. *Id.* at 846-47. In remanding, the court provided guidance for the trial court on how to apply the term "borrow." The court consulted the same dictionary definition we have employed here. *Gold II*, 812 P.2d at 34. The court commented that the trial court's remarks might be construed to suggest that the vehicle "was used too frequently by [the corporation] to be considered borrowed," which, the reviewing court noted, would be a misunderstanding of the concept of "borrow." *Id.* The court then continued: "Once the frequency of use concept is recognized as having nothing to do with the definition of 'borrowed,' it would follow from the trial court's theory that the vehicle *was* borrowed and, therefore, that coverage of the accident was excluded by the endorsement." (Emphasis added.) *Id.* The court remanded for the trial court to make "that determination *** in the first instance." *Id.*

¶ 39    None of the cases upon which the parties rely is pertinent to the meaning of "borrow" under the exclusion. For instance, *American States Insurance Co. v. Gawlicki & Hussey, Inc.*, 231 Ill. App. 3d 199 (1992), dealt with an insurance clause that was nearly the converse of the one in this case. The automobile coverage in the business policy in *Gawlicki* covered only "non-owned" automobiles, defining them as " 'autos' you lease, hire, rent, or borrow that are used in connection with your business." (Internal quotation marks omitted.) *Id.* at 200. Thus, while the covered vehicles in *Gawlicki* were limited to those that the insured leased, hired, rented, or borrowed (essentially, only *owned* vehicles were not covered), the policy at hand covers only vehicles that the insured does *not* own, hire, lease, rent, or borrow (hence many

more exclusions apply than in *Gawlicki*). The appellate court in *Gawlicki* held that there was no issue of material fact that the vehicle, despite its extensive use by the insured corporation, was owned by the business owner personally. *Id.* at 202. Therefore, because the vehicle was not owned by the corporation, there was coverage. *Gawlicki*, which focused exclusively on the concept of ownership, is inapposite here.

¶ 40 Based on the foregoing, we hold that, even if, as the trial court determined, Brian owned the Ford F-250, the undisputed material facts establish that McKee Masonry "borrow[ed]" the truck from Brian. Therefore, the Ford F-250 was not a "non-owned" vehicle, and the exclusion of coverage applies. We hold that, as a matter of law, there is not even potential coverage under the business policy for the Ford F-250. Since there is no possibility that defendant will have a duty to defend the underlying lawsuit, there will arise no duty to indemnify regarding that suit. See *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 (1993) ("In cases *** where no duty to defend exists and the facts alleged do not even fall *potentially* within the insurance coverage, such facts alleged could obviously never *actually* fall within the scope of coverage. Under no scenario could a duty to indemnify arise." (Emphases added.)).

¶ 41                                          III. CONCLUSION

¶ 42 For the foregoing reasons, we reverse the judgment of the trial court and remand with directions to enter summary judgment in favor of defendant on plaintiff's complaint.

¶ 43 Reversed and remanded with directions.