NOTICE
Decision filed 03/18/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190173-U

NO. 5-19-0173

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 14-MR-419 |
| | ) | |
| FLOYD J. SCHMITT and JAMES S. MANLEY, | ) | Honorable |
| | ) | Heinz M. Rudolf, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse and remand the judgment of the circuit court where plaintiff had no duty to defend its insured and thus was not estopped from raising policy defenses to coverage for the underlying tort action contained in the amended declaratory action.

¶ 2    Plaintiff, Country Mutual Insurance Company (Country Mutual), filed a declaratory action in the circuit court seeking a determination of whether it owed its insured, defendant Floyd J. Schmitt, a defense and indemnification in a suit[1] (underlying action) brought by defendant James S. Manley. On July 12, 2017, the circuit court found

_____

[1]*Manley v. Schmitt*, case No. 13-L-400, filed in the Circuit Court, Twentieth Judicial Circuit, St. Clair County, Illinois.

1

that Country Mutual had a duty to defend Floyd and on April 3, 2019, entered a judgment against Country Mutual for its policy limit of $250,000 plus postjudgment interest. Country Mutual now appeals the judgment of the circuit court, raising four issues for this court's review. For the following reasons, we reverse and remand the judgment of the circuit court.

¶ 3                                   I. BACKGROUND

¶ 4    Floyd purchased a 2000 Chevy Silverado (2000 Chevy) in October 2012. The 2000 Chevy was paid for by Floyd but was titled in the name of his nephew, Roy Schmitt. Floyd maintained an automobile insurance policy with Country Mutual on another vehicle for several years prior to his purchase of the 2000 Chevy, but he did not insure the 2000 Chevy with Country Mutual. Instead, Roy insured the 2000 Chevy through his automobile insurance with Geico Insurance Company (Geico).

¶ 5    At the time of the purchase, Floyd's driver's license had been revoked for approximately three years,[2] and Floyd testified that he never informed Country Mutual of the revocation of his driving privileges. According to Floyd's testimony, the 2000 Chevy was placed in his nephew's name "in case something happened" to him, but he went on to state that he had not placed any of his other property in his nephew's name.

¶ 6    Both Floyd and Roy testified that the 2000 Chevy was purchased for use as a farm truck. Floyd lived on the farm and Floyd normally parked the 2000 Chevy under a pavilion with other farming equipment with the ignition key inside of the vehicle. Floyd

---

[2]According to the fourth amended complaint filed in the underlying suit, Floyd had at least four prior convictions for driving under the influence of alcohol.

2

testified that he primarily used the vehicle on the farm property; however, he would occasionally use the 2000 Chevy to run errands in the local community.

¶ 7    On February 1, 2013, Floyd drove the 2000 Chevy to the home of a friend and then he and his friend proceeded in the 2000 Chevy to a bar. After leaving the bar, Floyd drove the 2000 Chevy while intoxicated. Floyd dropped his friend off and then, while driving to his home, collided with a vehicle driven by Manley. As a result of the collision, Manley suffered significant injuries. Manley filed the underlying suit against Floyd and Roy in the circuit court of St. Clair County on August 1, 2013. The underlying suit proceeded to a bench trial on March 24, 2015, and on March 26, 2015, the trial court entered judgment in favor of Manley and awarded him in $360,737 in damages. Roy's insurance carrier, Geico, covered the costs of the defense of the underlying suit and paid its policy limits of $20,000 towards the judgment.

¶ 8    Country Mutual filed a declaratory action against Floyd and Manley on October 16, 2014. On March 25, 2015, Country Mutual filed an amended complaint for declaratory action. The circuit court heard evidence on the declaratory action on April 6, 2017, and on July 12, 2017, issued a 29-page written order. In summary, the circuit court found that Country Mutual had a duty to defend Floyd and that the Country Mutual policy was not excess coverage because Manley's complaint raised facts which were, or potentially were, within the coverage of the Country Mutual policy. Because the duty to defend was triggered, the circuit court noted that Country Mutual was then required to either defend under a reservation of rights or secure a declaratory judgment. The circuit court found that the reservation of rights letters that Country Mutual had sent to Floyd

3

were never received by him, but that the letters were irrelevant since Country Mutual did not defend Floyd, nor did it intervene, in the underlying action. As such, the circuit court found that Country Mutual was required to promptly seek a declaratory judgment regarding its policy defenses.

¶ 9    Using the "reasonable time" test, the circuit court determined that Country Mutual filed its declaratory action over 20 months after being informed of the February 1, 2013, accident, over 14 months after the filing of the underlying lawsuit, and over 10 months after being placed on notice of the claims by Manley's counsel. As such, the circuit court found that Country Mutual's initial complaint requesting a declaratory judgment was filed within a "reasonable time" and that Country Mutual was not estopped from bringing the policy defense raised in the initial complaint for declaratory judgment. The only defense raised in Country Mutual's initial complaint for declaratory judgment was that its policy did not provide coverage for the February 1, 2013, incident because the 2000 Chevy was a nonowned vehicle available for regular use by Floyd.

¶ 10    The circuit court then went on to find that Country Mutual's amended complaint for declaratory judgment filed on March 25, 2015, failed all tests for timeliness and, as such, Country Mutual could not proceed with any defenses asserted in the amended complaint for declaratory judgment. Country Mutual's amended declaratory action again raised the defense that the 2000 Chevy was a nonowned vehicle available for regular use by Floyd and also raised the defenses that Floyd did not have permission to occupy the 2000 Chevy at the time of the incident, and that the Country Mutual policy did not cover claims involving punitive damages.

¶ 11    Concerning the only defense raised in Country Mutual's initial complaint for declaratory judgment, the circuit court found that the 2000 Chevy was not available for regular use by Floyd, but that his use of the vehicle was limited to farm activities on the farm property. The circuit court further determined that Floyd deviated from the permissible use of the 2000 Chevy as farm equipment and that his personal use of the vehicle, including the use of the vehicle on February 1, 2013, "was isolated, casual, and unauthorized."

¶ 12    Based on its analysis, the circuit court found in favor of Floyd and Manley and denied Country Mutual's complaint for declaratory judgment. This court will set forth additional portions of the circuit court's written order as relevant to our analysis below.

¶ 13    Country Mutual now appeals the judgment of the circuit court, raising four issues for this court's consideration. First, Country Mutual argues that it was a secondary or excess insurer, not the primary insurer, and therefore, the circuit court erred in finding that it had a duty to defend Floyd and in finding it had a duty to issue a reservation of rights and immediately file a declaratory judgment action on all issues to preserve any coverage defenses. Second, Country Mutual argues that the circuit court erred in finding that the 2000 Chevy was not available for regular use by Floyd. Third, Country Mutual argues that the circuit court erred in finding that an exclusion for a vehicle occupied without the permission of the owner did not apply. Fourth, and finally, Country Mutual argues that the circuit court erred in awarding interest on the tort judgment from the time of the judgment, and not from the time of the declaratory judgment order. We decide this appeal on the first issue of whether Country Mutual had a duty to defend Floyd in the

5

underlying action and, as such, this court will not address Country Mutual's remaining issues.

¶ 14                                   II. ANALYSIS

¶ 15   The issue of whether the circuit court erred in finding that Country Mutual had a duty to defend Floyd in the underlying lawsuit presents questions of both law and fact. The construction of an insurance policy involves a question of law, and therefore, our standard of review pertaining to those issues regarding the construction of the Country Mutual policy is *de novo*. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 480 (1997); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). Under a *de novo* standard of review, this court does not defer to the lower's court judgment or reasoning but performs the same analysis that the lower court would perform. *Arthur v. Catour*, 216 Ill. 2d 72, 78 (2005).

¶ 16   For questions of fact in reviewing a lower court's denial of a declaratory judgment, this court applies a manifest weight of the evidence standard of review. *In re Marriage of Kranzler*, 2018 IL App (1st) 171169, ¶ 39. "A factual finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the determination is arbitrary, unreasonable, and not based on the evidence." *In re G.W.*, 357 Ill. App. 3d 1058, 1059 (2005).

¶ 17   Within the perimeters of the above standards, we consider the issue of whether the circuit court erred in finding that Country Mutual had a duty to defend Floyd in the underlying lawsuit. Country Mutual argues that the 2000 Chevy was owned by Roy and insured through Geico. As such, it is Country Mutual's position that Geico was the

6

primary insurer and Country Mutual was a secondary or excess insurer. As an excess insurer, Country Mutual argues that it had no duty to defend Floyd until the amount of primary coverage had been exhausted. Country Mutual further argues that this matter did not involve an issue of the duty to defend but, instead, involved a question of indemnity of the amount of the judgment in the underlying action not paid by Geico and whether there was any excess indemnity coverage under Floyd's Country Mutual policy.

¶ 18    The first step in our analysis is determining whether Country Mutual was the primary or an excess insurer on the 2000 Chevy. The only reference within the circuit court's 29-page written order concerning whether Country Mutual provided excess coverage was: "[the circuit court] is simply not persuaded by Country Mutual's assertion that it provided excess coverage and did not have a duty to defend Floyd Schmitt." The circuit court did not provide any reasoning, or cite to any precedent, concerning its determination that the Country Mutual policy was not excess coverage.

¶ 19    Floyd's Country Mutual policy contained the following provision:

"Conditions, Section 1

In addition to the following conditions, all General Policy Conditions listed at the back of this policy also apply to Section 1.

* * *

3. Other Insurance. If there is other applicable liability insurance for a loss covered by this policy, we will pay only our share of the loss. Our share is determined by totaling the limits of this insurance and all other collectible insurance and finding the

7

percentage of the total which our limits represent. *However, any insurance we provide with respect to a vehicle you do not own will be in excess over any other collectible insurance.*" (Emphasis added.)

¶ 20    The terms of an insurance policy must be given their plain and ordinary meaning and enforced as written unless to do so would violate public policy. *Metzger v. Country Mutual Insurance Co.*, 2013 IL App (2d) 120133, ¶ 25. Since the insurer drafted the policy, any ambiguity that exists in the language of a policy must be resolved against the insurer and any provision in a policy that limits or excludes coverage must be construed liberally in favor of the insured. Defendants have not argued, nor do we find, that the language in the Country Mutual policy provision above is ambiguous. By its plain and ordinary meaning, Floyd's Country Mutual policy provided insurance, with respect to a vehicle not owned by Floyd, only in excess to any other collectible insurance. Neither party disputes that the 2000 Chevy was owned by Roy and insured by Geico. Therefore, the 2000 Chevy was clearly a vehicle that Floyd did not own and that Geico provided other collectible insurance. As such, under the plain and ordinary meaning of the other insurance provision, the Country Mutual policy was "in excess" of the coverage provided by Geico. Therefore, Country Mutual was an excess insurer to Geico regarding the 2000 Chevy.

¶ 21    We also find that enforcement of the Country Mutual other insurance provision would not violate public policy. The Illinois Supreme Court has determined that public policy is best served by requiring automobile owner's insurers to provide the primary

coverage to any person permitted by the owner to use the vehicle. See *Pekin Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 305 Ill. App. 3d 417, 421 (1999); *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 182 Ill. 2d 240, 245-46 (1998). In this case, Roy was the owner of the 2000 Chevy and the parties agree that Roy permitted Floyd to use the 2000 Chevy as a farm vehicle. Roy insured the 2000 Chevy through Geico. As such, Geico was the owner's insurer and required to provide the primary coverage to Floyd as a person permitted by Roy to use the 2000 Chevy. Therefore, our finding that Country Mutual was an excess insurer to Geico regarding the 2000 Chevy does not violate public policy.

¶ 22    The circuit court failed to address the Country Mutual policy provision above concerning other collectible insurance. Because the circuit court failed to properly determine whether Country Mutual was a primary or secondary insurer, it incorrectly analyzed whether Country Mutual had a duty to defend Floyd by conducting an estoppel analysis under a primary insurer's analysis. In doing so, the circuit court cited to *Federal Insurance Co. v. Economy Fire & Casualty Co.*, 189 Ill. App. 3d 732 (1989), and stated:

> "In *Federal Insurance Co.*, the court held that 'having examined these allegations, the instant policy, and the entire Manunas complaint, we conclude there was a duty to defend because (1) the action was brought against a named additional insured, J.R. Construction, and (2) the allegations of the complaint disclose the potential for policy coverage.' *Federal Insurance Co. v. Economy Fire & Casualty Co.*, 189 Ill. App. 3d 732, 735 (1989).

9

The Court reaches the same conclusion regarding the Country Mutual policy here and Country Mutual's duty to defend Floyd Schmitt for the February 1, 2013 incident."

¶ 23 The court in *Federal Insurance*, however, made no such findings. *Id.* It also did not involve any party by the name of J.R. Construction. *Id.* A review of the circuit court's written order located a later citation to *West American Insurance Co. v. J.R. Construction Co.*, 334 Ill. App. 3d 75 (2002). The *West American* court did make the above finding; however, we note that the *West American* court's finding was a determination that J.R. Construction was a named insured on the primary insurance policy. *Id.* at 86. As such, the circuit court's reliance on the *West American* holding was misplaced.

¶ 24 The *Federal Insurance* case that was incorrectly cited by the circuit court did, however, address the issue of the duty to defend where there is a provision within an insurance policy concerning other collectible insurance. *Federal Insurance Co.*, 189 Ill. App. 3d at 737. The *Federal Insurance* court noted that:

"Primary insurance coverage is coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the event that gives rise to liability. Primary insurers generally have the primary duty of defense. Excess or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted." *Id.* at 738.

¶ 25 We agree with the *Federal Insurance* court that an excess or secondary insurer's duty to defend attaches only after a predetermined amount of primary coverage has been

10

exhausted. As such, Country Mutual had no duty to defend Floyd in the underlying action until the Geico policy limits were exhausted. There is no indication in this matter that the Geico policy limit was exhausted until after the judgment was entered in the underlying action.

¶ 26    On appeal, defendants fail to cite any precedent holding that an excess insurer has the same duty to defend as a primary insurer. Defendants cite two cases in its argument that Country Mutual had a duty to defend Floyd in the underlying action. The first case defendants cite is *Economy Fire & Casualty Co. v. Brumfield*, 384 Ill. App. 3d 726, 730 (2008). That case involved the determination of the duty to defend with a primary insurer and did not address any issues regarding excess or secondary insurance. The second case was the *Federal Insurance* matter discussed above, and as we noted, the *Federal Insurance* court found no duty to defend by an excess insurer until the primary policy limit was exhausted. *Federal Insurance Co.*, 189 Ill. App. 3d at 737. As did the circuit court, defendants focus on the elements of a primary insurer's duty to defend and fail to address the provision within the Country Mutual policy on other collectable insurance.

¶ 27    Therefore, we find that Country Mutual was an excess insurer concerning the 2000 Chevy and that the primary Geico policy limit was not exhausted during the defense of the underlying action. Because an excess insurer's duty to defend is not triggered until the primary insurer's policy limited is exhausted, the circuit court erred in finding that Country Mutual owed Floyd a duty to defend in the underlying action.

¶ 28    Based on it finding that Country Mutual owed Floyd a duty to defend, the circuit court went on to find that Country Mutual was estopped from asserting its noncoverage

11

defenses contained in its amended declaratory complaint. The estoppel doctrine only applies where an insurer has breached a duty to defend. *Montgomery Ward & Co. v. Home Insurance Co*., 324 Ill. App. 3d 441, 450 (2001).

> "It is the duty to defend that gives rise to the duty to reserve rights when defense of a claim is undertaken, and without such a duty an insurer has no obligation to issue a reservation of rights letter. [Citation.] An excess insurer that has no duty to investigate coverage issues or to defend its insured will not be estopped from later asserting coverage defenses by a failure to issue a reservation of rights letter." *Id*.

¶ 29    We also note that the *Federal Insurance* court found that the excess insurance carrier was not estopped from asserting its noncoverage in the underlying action. *Federal Insurance Co.*, 189 Ill. App. 3d at 737. Because we have determined that Country Mutual was an excess insurer and had no duty to defend Floyd in the underlying action, we must find that Country Mutual should not have been estopped from asserting any noncoverage defense in the underlying action. Therefore, the circuit court erred in finding that Country Mutual was estopped from asserting the defenses contained in Country Mutual's amended complaint.

¶ 30    Finally, we would note that in Illinois, the general holding is that an insurer's duty to defend and its duty to indemnify are separate and distinct. *Conway v. Country Casualty Insurance Co*., 92 Ill. 2d 388, 394 (1982). The duty to indemnify is narrower than the duty to defend, and the duty to indemnify is only ripe for consideration if the insured has already incurred liability in the underlying action. *Outboard Marine Corp. v. Liberty*

12

*Mutual Insurance Co.*, 154 Ill. 2d 90, 127 (1992). The underlying action in this matter had been resolved and judgment entered. As such, we agree with Country Mutual that the question before the circuit court was one of indemnification and not simply a question of the duty to defend.

¶ 31    Therefore, we reverse the circuit court's judgment denying Country Mutual's declaratory action and we remand this matter to the circuit court for its consideration of any noncoverage defenses asserted by Country Mutual and the issue of indemnification concerning the underlying action.

¶ 32                                III. CONCLUSION

¶ 33    Based on the above, we reverse the circuit court's judgment and remand for further proceedings consistent with this decision.

¶ 34    Reversed and remanded.