DEBBIE DESAGA, Indiv. and as Adm'r of the Estate of Felix DeSaga, Deceased, Plaintiff and Counterdefendant-Appellant, v. WEST BEND MUTUAL INSURANCE COMPANY, Defendant and Counterplaintiff-Appellee.

Third District   No. 3—08—0645

Opinion filed June 15, 2009.

Jerry A. Esrig (argued) and Robert J. Zaideman, both of Zaideman & Esrig, P.C., of Chicago, for appellant.

Francis A. Spina (argued) and James B. Walton, both of Cremer, Shaughnessy, Spina, Jansen & Siegert, LLC, of Chicago, for appellee.

JUSTICE CARTER delivered the opinion of the court:

Decedent, Felix DeSaga, was hit by a car and killed after he went into the roadway to remove some pieces of angle iron that had fallen off of his truck. Plaintiff, Debbie DeSaga, decedent's widow and the administrator of his estate, sought insurance benefits related to the accident under the underinsured motorist (UIM) endorsement of the insurance policy issued to decedent's employer by defendant, West Bend Mutual Insurance Company. Defendant denied coverage claiming that decedent was not "occupying" the covered vehicle at the time of the accident as required under the policy to trigger UIM coverage. Plaintiff brought the instant action seeking a declaratory judgment that decedent was entitled to UIM coverage at the time of the accident. Defendant counterclaimed for a declaratory judgment to the contrary. Both sides moved for summary judgment. The trial court granted summary judgment for defendant, finding that decedent was not entitled to UIM coverage under the policy because he was not "occupying" the covered vehicle at the time of the accident. Plaintiff appeals. We reverse the trial court's grant of summary judgment in favor of defendant, enter summary judgment in favor of plaintiff, and remand this case for further proceedings in the trial court.

## FACTS

The accident in question occurred on October 6, 2006, at about 6:30 a.m. at the intersection of Wilmington-Peotone Road and Old

Chicago Road in Will County, Illinois. Wilmington-Peotone Road runs east and west and has one lane in each direction at that location. Old Chicago Road runs north and south and also has one lane in each direction at that location.

The facts leading up to the accident are not in dispute. At about 6 a.m., decedent was working and was driving a truck owned by his employer eastbound on Wilmington-Peotone Road, carrying a load of angle iron. When decedent turned left onto Old Chicago Road, some of the pieces of angle iron fell from the back of his truck onto the roadway, blocking the intersection to some extent. Each piece of angle iron was about 10 to 20 feet long.

Decedent completed his turn, pulled his truck over onto the east shoulder of Old Chicago Road north of the intersection, and got out of his truck to clear the angle iron off of the roadway. He left his truck running with the flashing emergency lights on. Steven Dreiling was traveling behind decedent and stopped to help. Decedent and Dreiling moved a couple of the pieces of angle iron to the side of the road and then went back out into the roadway to clear off another piece that was located in the northeast quadrant of the intersection, the portion of the intersection that was the closest to where decedent's truck was parked. As they were bending down to pick up the piece of angle iron, an underinsured motorist driving westbound on Wilmington-Peotone Road drove through the intersection and struck both decedent and Dreiling with his vehicle. Decedent was killed. Dreiling was injured. At the time that he was hit by the underinsured motorist, decedent was standing on the roadway in the northeast quadrant of the intersection near the yellow center line of Wilmington-Peotone Road. The record does not indicate exactly how far decedent was from his own work truck when he was hit or the exact amount of time that passed from when decedent got out of his truck until he was hit.

Decedent's employer had a business automobile insurance policy (the policy) that had been issued by defendant and was in effect at the time of the accident. The truck that decedent was using that morning was a covered vehicle under the policy. In the liability-coverage section of the policy, the term "insured" was defined as the named insured for any covered vehicle, anyone using a covered vehicle with the permission of the named insured (with some exceptions not relevant to this appeal), and anyone liable for the conduct of an "insured" (as described in the previous two categories). The policy contained an Illinois UIM endorsement, which provided a definition of the term "insured" that was more narrow than the definition provided in the liability-coverage section of the policy. For the purpose of UIM coverage, the term "insured" was defined as anyone "occupying" a covered

vehicle and anyone with regard to damages he or she was entitled to recover because of bodily injury sustained by another "insured." "Occupying" was defined in the endorsement as "in, upon, getting in, on, out or off."

Plaintiff filed with defendant a request for UIM benefits under the policy. Defendant denied coverage, claiming that decedent was not "occupying" the covered vehicle at the time of accident as required under the policy to trigger UIM coverage.

After coverage was denied, plaintiff brought the instant lawsuit seeking a declaratory judgment that decedent was entitled to coverage under the UIM portion of the policy. Defendant filed a counterclaim for declaratory judgment to the contrary. The only issue before the trial court was whether decedent was "occupying" the covered vehicle at the time of the injury. Both sides filed motions for summary judgment on that issue. The trial court granted summary judgment for defendant, finding that decedent was not "occupying" the covered vehicle when the accident occurred.

Plaintiff brought the instant appeal, challenging the trial court's grant of summary judgment for defendant. Just prior to the date of oral argument in this case, plaintiff filed a motion to add authority, citing the First District Appellate Court case of *Schultz v. Illinois Farmers Insurance Co.*, 387 Ill. App. 3d 622, 901 N.E.2d 957 (2009). The decision in *Schultz* had not been issued until after the briefs on appeal in the instant case had been filed. In her motion to add authority, plaintiff sought to add a new assertion in support of her argument that summary judgment should not have been granted in defendant's favor—that defendant could not define "insured" more narrowly in the UIM endorsement than it did in the liability-coverage section of the policy. We allowed the motion to add authority and gave the parties additional time to file supplemental briefs on the new assertion raised by plaintiff in the motion to add authority.

## ANALYSIS

As noted above, plaintiff argues on appeal that the trial court erred in granting summary judgment for defendant. In support of that argument, plaintiff asserts first that summary judgment should not have been granted for defendant, and should have instead been granted for plaintiff, because Illinois law prohibits an insurer from defining the term "insured" more narrowly for UIM coverage than it does for liability coverage (raised by plaintiff in the motion to add authority). Thus, plaintiff contends that since decedent is an "insured" as defined in the liability-coverage section of the policy, Illinois law requires that he be deemed to be an "insured" for UIM coverage under the policy as well.

Defendant argues that the trial court's grant of summary judgment is proper and should be affirmed. Defendant contends that although Illinois law prohibits an insurer from defining the term "insured" differently for uninsured motorist (UM) coverage than it does for UIM coverage, it does not prohibit an insurer from defining the term "insured" differently for liability coverage than it does for UM or UIM coverage. Defendant contends further that such a difference is allowed under the law because liability coverage, which applies when the insured is sued for injuries caused to a third party (third-party coverage), has a different and broader purpose than UM or UIM coverage, which applies when the insured is injured and is trying to recover for those injuries under the policy (first-party coverage).

The purpose of summary judgment is not to try a question of fact, but to determine if one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43, 809 N.E.2d 1248, 1256 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2006); *Adams*, 211 Ill. 2d at 43, 809 N.E.2d at 1256. In appeals from summary judgment rulings, the standard of review is *de novo*. *Adams*, 211 Ill. 2d at 43, 809 N.E.2d at 1256.

The interpretation of an insurance policy is a question of law that may properly be decided on a motion for summary judgment. *Schultz*, 387 Ill. App. 3d at 625, 901 N.E.2d at 960. When interpreting an insurance policy or any other contract, the primary goal is to give effect to the intent of the parties as expressed in the agreement. *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 416, 860 N.E.2d 280, 286 (2006). If the terms of an insurance policy are clear and unambiguous, they must be given their plain and ordinary meaning and enforced as written, unless to do so would violate public policy. *Nicor, Inc.*, 223 Ill. 2d at 416-17, 860 N.E.2d at 286; *Abrell v. Employers Insurance of Wausau*, 343 Ill. App. 3d 260, 262, 796 N.E.2d 643, 645 (2003). Insurance policies are to be liberally construed in favor of the insured (*Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 905 N.E.2d 747, 753 (2009)) and in favor of coverage (*United Services Automobile Ass'n v. Dare*, 357 Ill. App. 3d 955, 963-64, 830 N.E.2d 670, 678 (2005)). Any ambiguity that exists in the language of a policy must be resolved against the insurer, since the insurer drafted the policy. See *Dare*, 357 Ill. App. 3d at 963-64, 830 N.E.2d at 678. In addition, any provision in a policy that limits or excludes coverage must be construed liberally in favor of the insured and against the insurer. *Dare*, 357 Ill. App. 3d at 964, 830 N.E.2d at 678.

A provision in an insurance policy that conflicts with the law will be deemed to be void. See *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 129, 828 N.E.2d 1175, 1180 (2005). However, in determining whether a statutory provision will override a contractual one, a court must be mindful of the principles of freedom of contract. *Progressive Universal Insurance Co. of Illinois*, 215 Ill. 2d at 129, 828 N.E.2d at 1180. As our supreme court noted out in *Progressive*:

> "The freedom of parties to make their own agreements, on the one hand, and their obligation to honor statutory requirements, on the other, may sometimes conflict. These values, however, are not antithetical. Both serve the interests of the public. Just as public policy demands adherence to statutory requirements, it is in the public's interest that persons not be unnecessarily restricted in their freedom to make their own contracts." *Progressive Universal Insurance Co. of Illinois*, 215 Ill. 2d at 129, 828 N.E.2d at 1180.

A court's power to declare a provision of a contract void as against public policy, therefore, must be exercised sparingly. *Progressive Universal Insurance Co. of Illinois*, 215 Ill. 2d at 129, 828 N.E.2d at 1180.

■ Illinois has a statutory scheme for automobile insurance that provides for liability coverage, UM coverage, and UIM coverage. 625 ILCS 5/7—601(a) (West 2006); 215 ILCS 5/143a, 143a—2(4) (West 2006). Illinois law requires that all motor vehicles operated or registered in this state and designed for use on a public highway be covered by a liability insurance policy with minimum liability limits of $20,000/$40,000 for bodily injury or death. 625 ILCS 5/7—601(a), 7—203 (West 2006). From a legislative standpoint, the main purpose of the mandatory liability insurance requirement is to protect the public by securing payment of their damages. *Progressive Universal Insurance Co. of Illinois*, 215 Ill. 2d at 129, 828 N.E.2d at 1180. In addition to liability coverage, Illinois law also requires that automobile insurers provide UM coverage in the policies that they issue. 215 ILCS 5/143a (West 2006). The purpose of UM coverage (and UIM coverage) is to place the insured in the same position that the insured would have been in if the tortfeasor had carried adequate insurance. *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555, 591 N.E.2d 427, 429 (1992). The amount of UM coverage must at least be equal to the $20,000/$40,000 minimum liability limits (the statutory minimum limits), and if the liability limits under the policy are in excess of the statutory minimum limits, the UM coverage must be equal to the amount of liability coverage, unless the insured specifically rejects having UM coverage in excess of the statutory minimum limits. 215

ILCS 5/143(a), 143(a)—2(1) (West 2006). Furthermore, if the policy provides for UM coverage in excess of the statutory minimum limits, the policy must also provide for UIM coverage in amount equal to the amount of UM coverage. 215 ILCS 5/143a—2(4) (West 2006). Thus, under the statutory scheme described above, the amount of UM and UIM coverage must always be equal. See 215 ILCS 5/143a—2(4) (West 2006); *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 44-45, 802 N.E.2d 774, 778 (2003).

It is within the above statutory framework that we must consider the assertion made by plaintiff in her motion to add authority on appeal—that Illinois law prohibits an insurer from defining the term "insured" more narrowly for UIM coverage than it does for liability coverage. The discussion of this issue initially stems from the decision of our supreme court in *Heritage Insurance Co. of America v. Phelan*, 59 Ill. 2d 389, 321 N.E.2d 257 (1974). In *Phelan*, our supreme court held that a restrictive operator endorsement, attached to an insurance policy and agreed to by the named insured, was sufficient to exclude the named insured's son from UM coverage under the policy. See *Phelan*, 59 Ill. 2d at 391-99, 321 N.E.2d at 258-62. In reaching that conclusion, our supreme court made the following statement in *dicta*:

"It is clear from the holdings of *Barnes, Doxtater*, and *Goodpasture* and from the language of the statute itself that the legislative intent was to provide extensive uninsured-motorist protection for those who are 'insureds' under an automobile liability policy. But neither the statute nor any of these decisions places any restriction on the right of the parties to an insurance contract to agree on which persons are to be the 'insureds' under an automobile insurance policy. It is only after the parties designate the 'insureds' that the statute and case law become applicable and prohibit an insurance company from either directly or indirectly denying uninsured-motorist coverage to an 'insured.' " *Phelan*, 59 Ill. 2d at 395, 321 N.E.2d at 260.

That statement by the supreme court in *Phelan* was later referenced by the First District Appellate Court in *Cohs v. Western States Insurance Co.*, 329 Ill. App. 3d 930, 769 N.E.2d 1038 (2002). In *Cohs*, the First District Appellate court held that the definition of the term "insured" under the UM provision of an insurance policy, although more narrow than the definition of the term "insured" under the liability coverage section of that same policy, was not unduly restrictive and did not violate the uninsured motorist statute. *Cohs*, 329 Ill. App. 3d at 937, 769 N.E.2d at 1044. In reaching that conclusion, the appellate court in *Cohs* relied on a portion of the supreme court's statement in *dicta* from *Phelan*, that section 143a does not

place " 'any restriction on the right of the parties to an insurance contract to agree on which persons are to be the "insureds" under an automobile insurance policy.' " *Cohs,* 329 Ill. App. 3d at 937, 769 N.E.2d at 1045, quoting *Phelan,* 59 Ill. 2d at 395, 321 N.E.2d at 257. A similar result was reached by the United States District Court for the Northern District of Illinois in *Employers' Fire Insurance Co. v. Berg,* No. 05 C 4710, slip op. at 4 (N.D. Ill. January 25, 2007), a case which was not reported in the second edition of the Federal Supplement.

In the recent case of *Schultz v. Illinois Farmers Insurance Co.,* cited above, a panel of the First District Appellate Court, different from the one that decided *Cohs,* was faced with the issue of whether an insurer could define the term "insured" differently for UIM coverage than it did for UM coverage in the same policy. *Schultz,* 387 Ill. App. 3d at 623, 901 N.E.2d at 959. The appellate court held that the term "insured" had to be defined the same way for both UM and UIM coverage and that the use of two different definitions of that term for UM and UIM coverage contravened the intent of section 143a—2(4) of the Illinois Insurance Code. *Schultz,* 387 Ill. App. 3d at 629, 901 N.E.2d at 963. In reaching that conclusion, the appellate court stated in *dicta* that it read *Phelan* as "holding that section 143a does not restrict the parties to an insurance contract from determining initially who will be insured under the policy, but once that determination has been made, section 143a mandates that UM coverage be extended to anyone who is an insured for purposes of liability coverage." *Schultz,* 387 Ill. App. 3d at 627, 901 N.E.2d at 961. The appellate court panel in *Schultz* noted that the previous panel in *Cohs* had failed to consider the entire statement of the supreme court (referenced above) in *Phelan* and instead had only considered the first portion of that statement. *Schultz,* 387 Ill. App. 3d at 626-27, 901 N.E.2d at 961.

■ Plaintiff's assertion in the instant case—that Illinois law prohibits an insurer from defining the term "insured" more narrowly for UIM coverage than it does for liability coverage—is based upon the *dicta* in *Schultz* and upon the interpretation in *Schultz* of the *dicta* in *Phelan.* Defendant initially argues that the assertion is waived because plaintiff failed to raise the assertion in the trial court. See *Illinois Farmers Insurance Co. v. Cisco,* 178 Ill. 2d 386, 395, 687 N.E.2d 807, 811 (1997) (an argument not made in the trial court is generally waived or forfeited on appeal). Defendant contends that although *Schultz* is a new case, it merely presents a different interpretation of *Phelan,* an interpretation that plaintiff was obligated to argue for in the trial court. However, as plaintiff correctly points out, at the time of the trial court proceedings, the only cases interpreting *Phelan* were contrary to the interpretation set forth in *Schultz.* See *Cohs,* 329 Ill.

App. 3d at 937, 769 N.E.2d at 1044-45; *Berg*, slip op. at 4. Had this particular assertion been made in the trial court, the trial court would have been required to reject it, based upon the interpretation of *Phelan* set forth in *Cohs*, an interpretation that the trial court was required to follow. See *People v. Harris*, 123 Ill. 2d 113, 128, 526 N.E.2d 335, 340 (1988) (the decisions of an appellate court are binding precedent on all of the trial courts regardless of locale). Under these circumstances, we find that plaintiff has not waived or forfeited this particular assertion by failing to raise it in the trial court. Although we are mindful of the importance of the waiver or forfeiture rule to the appellate process, we note that it is a rule that is binding upon the parties and not upon the court. See *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 504-05, 771 N.E.2d 357, 371 (2002). Thus, we would have elected to reach the merits of this issue, regardless of any waiver or forfeiture that may have occurred.

■ Turning to the merits of plaintiff's assertion, we agree with the appellate court's analysis in *Schultz*. Under Illinois's statutory scheme of automobile insurance, liability coverage, UM coverage, and UIM coverage are all connected. See 625 ILCS 5/7—601(a) (West 2006); 215 ILCS 5/143a, 143a—2 (West 2006). UM and UIM coverage were intended by the legislature to complement the liability coverage that the insured had obtained. See *Phelan*, 59 Ill. 2d at 393, 321 N.E.2d at 259. Illinois law requires that the insurer provide UM and UIM coverage at the same amount as liability coverage.[1] Once it has been determined who will be insured under the liability section of the policy, the insurer may not, either directly or indirectly, deny UM or UIM coverage to an insured. See *Phelan*, 59 Ill. 2d at 395, 321 N.E.2d at 260; *Schultz*, 387 Ill. App. 3d at 628, 901 N.E.2d at 962. An insurer's attempt to define the term "insured" differently for UM or UIM coverage than it did for liability coverage is exactly what our supreme court condemned in *Phelan*—an indirect attempt by the insurer to deny UM or UIM coverage to an "insured." Thus, we find in the present case that defendant's attempt to define the term "insured" more narrowly for UIM coverage under the policy than it did for liability coverage violates Illinois law. See *Phelan*, 59 Ill. 2d at 395, 321 N.E.2d at 260; *Schultz*, 387 Ill. App. 3d at 628, 901 N.E.2d at 962. Plaintiff's decedent, therefore, is entitled to UIM coverage under the policy.

Furthermore, even if we had declined to reach the merits of plaintiff's initial assertion or had declined to follow the analysis in

---

[1]As noted above, if the amount of liability coverage exceeds the statutory minimum limits, the insured may reject UM coverage in excess of the statutory limits. 215 ILCS 5/143a—2(1) (West 2006).

*Schultz*, we still would have ruled in plaintiff's favor in this case. Plaintiff's alternative assertion on appeal is that the trial court erred in finding that decedent was not "occupying" the covered vehicle at the time of the accident and in granting summary judgment for defendant on that basis. We agree with that assertion.

The broad definition of "occupying" that was used in the policy in the present case has previously been interpreted by this court and other Illinois courts. See *Abrell*, 343 Ill. App. 3d at 262, 796 N.E.2d at 645; *Mathey v. Country Mutual Insurance Co.*, 321 Ill. App. 3d 805, 806, 748 N.E.2d 303, 305 (2001); *Cohs*, 329 Ill. App. 3d at 932, 769 N.E.2d at 1041. In those cases, it was held that to impose liability on the insurer, two requirements must be satisfied related to the accident in question: (1) there must be some nexus or relationship between the injured party and the covered vehicle, and (2) there must be actual or virtual physical contact between the injured party and the covered vehicle. See *Abrell*, 343 Ill. App. 3d at 262, 796 N.E.2d at 645; *Mathey*, 321 Ill. App. 3d at 812, 748 N.E.2d at 310; *Cohs*, 329 Ill. App. 3d at 934, 769 N.E.2d at 1042. The analysis in this case is more narrow still since defendant concedes that there is a relationship between decedent and the covered vehicle and since the parties agree that decedent was not in actual physical contact with the covered vehicle at the time of the accident. Thus, to determine if decedent was entitled to coverage under the UIM provision of the policy in the present case, we need only to determine whether decedent was in virtual physical contact with the covered vehicle when the accident occurred.

We answer that question in the affirmative. It is clear from the record in this case that decedent had been using the covered vehicle just moments before the accident occurred, that he had parked the vehicle nearby, that he had put his flashing emergency lights on, and that he had left the engine of the vehicle running as he went to remove the pieces of angle iron from the roadway. Arguably, decedent may have had a statutory obligation to promptly attend to the traffic hazard that had been created. See 625 ILCS 5/11—1413(b) (West 2006). At the very least, it was the responsible thing for decedent to do. Based upon the unique facts of this particular case, we find that decedent was in virtual physical contact with the covered vehicle at the time of the accident and that he was, therefore, "occupying" the covered vehicle when the accident occurred. See *De Almeida v. General Accident Insurance Co. of America*, 314 N.J. Super. 312, 316-17, 714 A.2d 967, 970 (1998) (decedent, who was retrieving cones from roadway during work, did not relinquish his "occupying" status as to the covered vehicle). Thus, decedent is entitled to UIM coverage under the policy, even if the definition of the term "insured" placed in the UIM endorsement is allowed to stand.

1072

For the foregoing reasons, we reverse the trial court's grant of summary judgment in favor of defendant. Instead, we grant plaintiff's motion for summary judgment on this issue and remand the case to the trial court for further proceedings.

Reversed; summary judgment granted for plaintiff; cause remanded.

O'BRIEN, P.J., and McDADE, J., concur.