Rule 23 Order filed
March 16, 2017;
Motion to publish granted
May 15, 2017.

2017 IL App (5th) 160110

NO. 5-16-0110

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| MICHAEL BRUCE WORLEY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee and Cross-Appellant, | ) | Wayne County. |
| | ) | |
| v. | ) | No. 12-L-3 |
| | ) | |
| P. JEAN FENDER, DAVIS & SONS OIL | ) | |
| COMPANY, STATE AUTO PROPERTY & | ) | |
| CASUALTY INSURANCE COMPANY, and | ) | |
| FEDERATED MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Federated Mutual Insurance Company, | ) | Larry D. Dunn, |
| Defendant-Appellant and Cross-Appellee). | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Justices Chapman and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1                          BACKGROUND

¶ 2    This appeal arises from a dispute regarding underinsured motorist coverage.
Plaintiff, Michael B. Worley, sustained serious injuries in an automobile accident on May
12, 2011, when he collided with a vehicle operated by P. Jean Fender. At the time of the
accident, plaintiff was operating a 2005 Freightliner FLD132 box truck during the course

1

and scope of his employment with Davis & Sons Oil Company (Davis & Sons). Davis & Sons owned the box truck. Fender caused the accident by failing to stop at a stop sign and yield to the vehicle plaintiff was driving.

¶ 3 After the accident, plaintiff filed a personal injury claim against Fender. Fender's automobile was covered by an automobile liability insurance policy issued by State Auto Property & Casualty Insurance Company (State Auto). State Auto offered the $100,000 limits of Fender's policy to plaintiff in exchange for a release of all causes of action plaintiff had against Fender as a result of the accident. Plaintiff accepted State Auto's offer, and State Auto tendered $100,000 to plaintiff.

¶ 4 Plaintiff also made a claim against Davis & Sons' commercial automobile insurance policy (policy) issued by defendant, Federated Mutual Insurance Company, which covered the vehicle plaintiff was driving at the time of the accident. The policy was initially issued to Davis & Sons in April 2004 and was subsequently renewed each year thereafter through the date of the accident. At the time of the accident, the policy stated it was effective from April 1, 2011, to April 1, 2012. With respect to coverage, the policy provided bodily injury liability limits of $1 million. It further provided underinsured motorist coverage limits of $500,000 for directors, partners, officers, or owners of the named insured and family members who qualified as insureds. The policy provided underinsured motorist coverage limits of $40,000 for any other person who qualified as an insured. Defendant denied plaintiff's demands for underinsured motorist benefits on grounds that the limits of the policy's underinsured motorist coverage for plaintiff was $40,000, and plaintiff had already received $100,000 from Fender's policy.

¶ 5     Initially, plaintiff filed a four-count complaint against defendants Fender, Davis & Sons, and State Auto. Counts III and IV of the original complaint were settled and dismissed, and Fender and State Auto were also dismissed.

¶ 6     Defendant subsequently removed this case to the United States District Court for the Southern District of Illinois. While the case was in federal court, plaintiff filed a two-count first amended complaint which remains the subject of this appeal. The first count sought declaratory relief and a reformation of defendant's policy so that it provided underinsured motorist coverage and benefits to plaintiff with limits of $1 million rather than $40,000. Specifically, plaintiff argued the underinsured motorist limits had to be reformed to match the policy's bodily injury liability limits of $1 million because Davis & Sons did not effectively reject the policy's bodily injury liability limits. Plaintiff further alleged that the structure of the policy, which included step-down underinsured motorist limits for different classes of insureds, violated Illinois law and public policy because the terms restricted the limits of coverage based solely on an insured's status at the time of a loss. Plaintiff also sought that defendant be required to participate in binding arbitration with plaintiff. The second count alleged defendant's failure to acknowledge plaintiff's claim for underinsured motorist benefits under the policy with reasonable promptness was "vexatious and unreasonable and constitute[d] an improper claims practice" under section 154.6 of the Illinois Insurance Code (215 ILCS 5/154.6 (West 2010)). Plaintiff sought money damages and attorney fees.

¶ 7     On May 19, 2014, after this case was remanded by the federal court to Wayne County, plaintiff filed a motion for summary judgment on count I of plaintiff's first

amended complaint. On June 10, 2014, defendant filed a motion for summary judgment on both counts of plaintiff's first amended complaint asserting plaintiff was not an "underinsured motorist" as defined by the policy because the limits available under Fender's policy ($100,000) exceeded the underinsured motorist limits available to plaintiff under the policy at issue ($40,000). As plaintiff had already received an amount ($100,000) in excess of the limits available to plaintiff under the policy ($40,000), defendant argued no underinsured motorist coverage was available to plaintiff.

¶ 8    A hearing on the cross-motions was held on July 23, 2014. On November 10, 2015, the trial court entered an order which granted partial summary judgment in favor of plaintiff on the first count, and granted summary judgment in favor of defendant on the second count. With respect to count I, the court granted plaintiff's request that the policy be reformed to provide underinsured motorist coverage limits equal to the policy's bodily injury liability limit of $1 million but rejected plaintiff's argument that the structure of the policy's underinsured motorist coverage was void under Illinois law. The court further determined no arbitration was required concerning plaintiff's underinsured motorist claim. Regarding count II, the court concluded there was no vexatious and unreasonable delay on the part of defendant.

¶ 9    Defendant subsequently filed a motion to reconsider, which was denied. Defendant then timely filed a notice of appeal, and plaintiff timely filed a notice of cross-appeal.

4

¶ 10                                    ANALYSIS

¶ 11    Defendant's first contention on appeal alleges the trial court's order granting

partial summary judgment in favor of plaintiff on count I of plaintiff's first amended

complaint should be reversed. Specifically, defendant alleges the trial court erred in

finding Davis & Sons did not effectively reject the policy's liability limits of $1 million

or effectively select underinsured motorist limits that were lower than $1 million.

¶ 12    The standard of review for a summary judgment is *de novo*. *Clayton v. Millers

First Insurance Cos.*, 384 Ill. App. 3d 429, 431, 892 N.E.2d 613, 615 (2008). Similarly,

the construction of an insurance policy is a question of law which is also reviewed

*de novo*. *Clayton*, 384 Ill. App. 3d at 431, 892 N.E.2d at 615.

¶ 13    The primary goal when interpreting an insurance policy is to give effect to the

intent of the parties as expressed in the agreement. *DeSaga v. West Bend Mutual

Insurance Co.*, 391 Ill. App. 3d 1062, 1066, 910 N.E.2d 159, 163 (2009). Where the

terms of an insurance policy are clear and unambiguous, they must be given their plain

and ordinary meaning and enforced as written. *DeSaga*, 391 Ill. App. 3d at 1066, 910

N.E.2d at 163. It is well settled that insurance policies are to be liberally construed in

favor of the insured and in favor of coverage. *DeSaga*, 391 Ill. App. 3d at 1066, 910

N.E.2d at 164. Any ambiguity in the language of a policy must be resolved against the

insurer that drafted the policy. *DeSaga*, 391 Ill. App. 3d at 1066, 910 N.E.2d at 164.

Moreover, any policy provision that limits or excludes coverage must be construed

5

liberally in favor of the insured and against the insurer. *DeSaga*, 391 Ill. App. 3d at 1066, 910 N.E.2d at 164.

¶ 14    Summary judgment is appropriate only where " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Clayton*, 384 Ill. App. 3d at 431, 892 N.E.2d at 615 (quoting 735 ILCS 5/2-1005(c) (West 2004)). Summary judgment is a drastic remedy which should be allowed only where the right of the moving party is clear and free from doubt. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 291, 730 N.E.2d 1119, 1127 (2000). As a reviewing court, we may affirm a grant of summary judgment on any basis appearing in the record, whether or not the trial court relied on that basis, and even if the trial court's reasoning was incorrect. *Bank Financial, FSB v. Brandwein*, 2015 IL App (1st) 143956, ¶ 40, 36 N.E.3d 421.

¶ 15    In this case, it is undisputed that the policy is governed by section 143a-2 of the Illinois Insurance Code (Code) (215 ILCS 5/143a-2 (West 2008)). However, the parties dispute which version of section 143a-2 applies to the policy in question: (1) the version in effect at the time the policy was originally issued in 2004 or (2) the amended version, effective July 16, 2004, in effect at the time of the accident. Plaintiff argues the version in effect at the time the policy was originally issued should govern, while defendant contends the amended version in effect at the time of the accident should govern. For the following reasons, we conclude Davis & Sons' ineffective rejection of the policy's bodily injury liability limits/selection of underinsured motorist limits lower than the liability

6

limits contravenes either statute, and, therefore, supports a finding of partial summary judgment in favor of plaintiff on count I of plaintiff's first amended complaint.

¶ 16    In order to reflect the changes made by the 2004 amendment to section 143a-2, the trial court cited the amended version in its order, but placed a strike through the words/provisions removed by the amendment and made bold, italicized, and underlined the words/provisions added by the amendment. We will cite to the public act amending the statute, striking through the words/provisions removed by the amendment and italicizing the words/provisions added by the amendment. In relevant part, section 143a-2 provides:

> "(1) Additional uninsured motor vehicle coverage. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle designed for use on public highways and required to be registered in this State unless uninsured motorist coverage as required in Section 143a of this Code is included in an amount equal to the insured's bodily injury liability limits unless specifically rejected by the insured *as provided in paragraph (2) of this Section*. Each insurance company providing the coverage must provide applicants with a brief description of the coverage and advise them of their right to reject the coverage in excess of the limits set forth in Section 7-203 of The Illinois Vehicle Code. The provisions of this amendatory Act of 1990 apply to policies of insurance applied for after June 30, 1991.

7

(2) Right of rejection of additional uninsured motorist coverage. *Any named insured or applicant* ~~After June 30, 1991, every application for motor vehicle coverage must contain a space for indicating the rejection of additional uninsured motorist coverage. No rejection of that coverage may be effective unless the applicant signs or initials the indication of rejection. The applicant~~ may reject additional uninsured motorist coverage in excess of the limits set forth in Section 7-203 of the Illinois Vehicle Code *by making a written request for limits of uninsured motorist coverage which are less than bodily injury liability limits or a written rejection of limits in excess of those required by law. This election or rejection shall be binding on all persons insured under the policy.* In those cases~~,~~ ~~including policies first issued before July 1, 1991,~~ where the insured has elected to purchase limits of uninsured motorist coverage which are less than bodily injury liability limits or to reject limits in excess of those required by law, the insurer need not provide in any renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary policy, coverage in excess of that elected by the insured in connection with a policy previously issued to such insured by the same insurer unless the insured subsequently makes a written request for such coverage.

(3) The original *document* ~~application~~ indicating the applicant's selection of uninsured motorist coverage limits shall constitute sufficient evidence of the applicant's selection of uninsured motorist coverage limits ~~and shall be binding on all persons insured under the policy~~. For purposes of this Section any reproduction of the *document* ~~application~~ by means of photograph, photostat, microfiche,

8

computerized optical imaging process, or other similar process or means of reproduction shall be deemed the equivalent of the original *document* ~~application~~.

(4) For the purpose of this Code the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle." Pub. Act 93-762 § 5 (eff. Jul. 16, 2004) (amending 215 ILCS 5/143a-2(1)-(4) (West 2002)).

¶ 17 A careful reading of the above provisions indicates that both the preamended and amended version of the statute require insurers to include in each automobile liability policy underinsured motorist coverage equal to the bodily injury liability limits of the policy unless specifically rejected by the insured. In this case, Davis & Sons was the named insured. Thus, the policy at issue was required to include underinsured motorist coverage equal to the policy's bodily injury liability limits of $1 million unless specifically rejected by Davis & Sons.

¶ 18    After careful review of the record in its entirety, we find no evidence which indicates Davis & Sons made an effective rejection of the policy's bodily injury liability limits or selection of underinsured motorist limits lower than the bodily injury liability limits. In order to make the rejection of bodily injury liability limits effective, the preamended version of section 143a-2 required the policy's application to contain a space for indicating such rejection, which was ineffective unless the applicant signed or initialed the indication of rejection. 215 ILCS 5/143a-2 (West 2002). Here, Davis & Sons did not complete an application for the policy, and we find no evidence that a named insured, applicant, or any other individual authorized by Davis & Sons signed or initialed a specific rejection/selection of the policy's lower underinsured motorist limits of $40,000 for the category plaintiff fell into as an employee of Davis & Sons ("any other persons qualifying as 'insureds' ").

¶ 19    Further, the amendment to the statute and subsequent yearly renewals of the policy do not lend support to defendant's position that Davis & Sons effectively rejected the liability limits or selected lower underinsured motorist limits. The amended version of section 143a-2 provides that a named insured or applicant may effectively reject a policy's liability limits by making a written request for limits of underinsured motorist coverage which are less than the bodily injury liability limits or a written rejection of limits in excess of those required by law. 215 ILCS 5/143a-2 (West 2008). Here, we find no evidence that a named insured, applicant, or any other person authorized by Davis & Sons made a written request for underinsured motorist limits less than the bodily injury liability limits. Thus, under both the preamended and amended version of section 143a-2,

we find no evidence that Davis & Sons made an effective rejection of the policy's bodily injury liability limits or a selection of lower underinsured motorist limits.

¶ 20　Moreover, the record indicates that neither Todd Davis, the president of Davis & Sons, nor his wife Susan Davis, the secretary at Davis & Sons, were made aware of the option to reject the policy's bodily injury liability limits/select lower underinsured motorist limits until after plaintiff's accident. The record shows Davis & Sons never discussed this option with defendant after the policy was issued. Although the policy was subsequently renewed yearly after the original policy was issued and after the amendment to the statute took effect, Davis & Sons never made a calculated, knowing rejection of liability limits or selection of lower underinsured motorist limits, regardless of what version of the statute was in effect. In either circumstance, defendant failed to assure its insured made a knowing rejection/selection regarding underinsured motorist coverage.

¶ 21　Defendant bears the burden to show it complied with section 143a-2 regarding its insured's rejection of the policy's bodily injury liability limits/selection of lower underinsured motorist limits. For the reasons above, we cannot conclude defendant has met its burden. Accordingly, the trial court appropriately granted partial summary judgment in favor of plaintiff on count I of plaintiff's first amended complaint, and properly reformed the policy to provide coverage limits for plaintiff's underinsured motorist claim equal to the policy's bodily injury liability limits of $1 million.

¶ 22　Defendant relies on a document entitled "Illinois Commercial Auto Coverage Option Form" in support of its assertion that Davis & Sons effectively rejected the

11

policy's bodily injury liability limits/selected underinsured motorist limits lower than the policy's liability limits. The first page of this option form from which defendant relies states:

> "Uninsured Motorists and Underinsured Motorists coverage, unless otherwise provided in your policy, pays for bodily injury damages to you, members of your family who live with you, and other people riding in your car who are injured by: (1) an uninsured motorists, (2) a hit-and-run motorist, or (3) an insured motorist who does not have enough liability insurance to pay for bodily injury damages to any insured person. These coverages, unless otherwise provided in your policy, protect you and your family members who live with you while riding in any vehicle or while a pedestrian.

> Illinois law requires that automobile liability policies include Uninsured Motorists and Underinsured Motorists coverage at limits equal to the Bodily Injury Liability limits in your policy unless you select a lower limit.

> Please indicate your desired option below, sign and date this form and promptly return."

¶ 23    Below these provisions, the coverage form provides two columns of limit options. In these columns, an "x" is marked in a $500,000 box under the limit for directors, officers, partners, or owners of the named insured and family members who qualify as insured. There is also an "x" marked in a $40,000 box under the limit for any other person who qualifies as an insured. Next to these limit columns are unknown initials dated "4/04." Although these initials are unknown, the record indicates they are the

initials of an employee of defendant. The only known handwriting on this page of the coverage form is that of Mark Niebrugge, an agent of defendant who acquired Davis & Sons' business and worked on Davis & Sons' account, whose printing is shown on the blanks at the top of the option form. Finally, on what is purported to be the second page of the option form is Todd Davis's signature dated "4/16/04."

¶ 24   After careful consideration, we cannot conclude this option form is sufficient evidence that Davis & Sons effectively rejected the policy's bodily injury liability limits or effectively selected lower underinsured motorist limits. There is nothing on the first page of the coverage form, where the alleged rejection is marked, which indicates Davis & Sons made such a rejection. As we previously stated, the initials next to the checked box of $40,000 in the "limit options" section of the coverage form, which defendant contends limits plaintiff's underinsured motorist coverage to $40,000, are not the initials of any person or employee of Davis & Sons. Rather, they are the initials of an individual employed by defendant. Thus, the alleged rejection defendant points to was not initialed by the insured as required by the preamended version of section 143a-2. 215 ILCS 5/143a-2 (West 2002). With regard to the amended version of section 143a-2, this was not a written request for lower underinsured motorist coverage made by the insured or applicant as required by statute. 215 ILCS 5/143a-2 (West 2008).

¶ 25   Regarding Todd Davis's signature dated April 16, 2004, on what is purported to be the second page of the option form, we cannot conclude this was a specific rejection of liability limits or selection of lower underinsured motorist limits. We find no affirmation that Todd Davis's signature indicates a specific rejection/selection concerning

13

underinsured motorist coverage. The record indicates Todd Davis does not recall ever discussing this option form with defendant before signing the line on what is purported to be the second page of the coverage form, and as we previously indicate, Todd Davis was not made aware that different levels of underinsured motorist limits for his employees were available until after plaintiff's accident. For these reasons, we reject defendant's argument.

¶ 26 We next address the trial court's finding that no arbitration is required concerning plaintiff's underinsured motorist claim. Although this issue is not addressed by plaintiff in his brief, defendant contends the trial court's determination should be affirmed. We agree.

¶ 27 In *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 949 N.E.2d 639 (2011), our supreme court held that the statute mandating underinsured motorist coverage does not require arbitration. As our supreme court explained:

> "Despite the interrelatedness of uninsured-motorist and underinsured-motorist coverages, relevant differences exist between the statutory mandates. The Illinois Insurance Code requires that 'any dispute with respect to the coverage and the amount of damages' under an uninsured-motorist policy must be submitted for arbitration. 215 ILCS 5/143a(1) (West 2006). *** However, the statutory provision mandating underinsured-motorist coverage has never required a similar arbitration agreement. Indeed, the underinsured-motorist statute has never required arbitration of any kind." *Rosen*, 242 Ill. 2d at 58-59, 949 N.E.2d at 646-47.

14

¶ 28 In light of the foregoing, we agree with the trial court's finding that no arbitration is required regarding plaintiff's underinsured motorist claim. We need not further address this issue.

¶ 29 The next issue raised by defendant contends the trial court properly granted summary judgment in favor of defendant on count II of plaintiff's first amended complaint which sought attorney fees and money damages. In count II of his first amended complaint, plaintiff alleged defendant's failure to acknowledge his underinsured motorist claim constituted a vexatious and unreasonable delay in violation of section 154.6 of the Code (215 ILCS ILCS 5/154.6 (West 2010)). For the following reasons, we agree with the trial court's determination that defendant's conduct was not vexatious or unreasonable.

¶ 30 The question of vexatious and unreasonable delay is a factual one which must be based on an assessment of the totality of the circumstances. *Norman v. American National Fire Insurance Co.*, 198 Ill. App. 3d 269, 304, 555 N.E.2d 1087, 1110 (1990). There is no single factor that is controlling in determining whether a delay is vexatious or unreasonable. *Norman*, 198 Ill. App. 3d at 304, 555 N.E.2d at 1110. Rather, it is the attitude of the insurer which must be examined. *Norman*, 198 Ill. App. 3d at 304, 555 N.E.2d at 1110. Where there is a *bona fide* dispute regarding coverage, depending on the circumstances, a delay in settling the claim may not violate the statute providing a penalty for an insurer's vexatious and unreasonable action or delay. *Millers Mutual Insurance Ass'n of Illinois v. House*, 286 Ill. App. 3d 378, 387, 675 N.E.2d 1037, 1043 (1997). A reviewing court will not disturb a trial court's determination regarding whether

15

an insurer's action and delay is vexatious and unreasonable absent an abuse of discretion. *Millers Mutual Insurance Ass'n of Illinois*, 286 Ill. App. 3d at 387, 675 N.E.2d at 1043.

¶ 31 Here, we conclude there was a *bona fide* coverage dispute regarding plaintiff's underinsured motorist claim which has presented legal and factual issues regarding coverage. Further, as we discuss throughout this opinion, both parties have raised legitimate questions regarding the changing law with respect to the effective rejection/selection of underinsured motorist limits. For these reasons, we conclude defendant's failure to acknowledge plaintiff's underinsured motorist claim and delay was not vexatious or unreasonable.

¶ 32 Finally, on cross-appeal, plaintiff argues the trial court erred in granting summary judgment in favor of defendant on count II of plaintiff's first amended complaint because the step-down limits of the policy violate Illinois public policy and section 143.13a of the Code (215 ILCS 5/143.13a (West 2008)). Specifically, plaintiff asserts the alleged selection of lower step-down underinsured motorist limits ($500,000 for directors, partners, officers, or owners of Davis & Sons or a family member who qualified as an insured, and $40,000 for any other person who qualified as an insured) is void because the limits are based solely on status. Before we address plaintiff's argument, we reiterate that a reviewing court applies a *de novo* standard of review to an entry of summary judgment. *Clayton*, 384 Ill. App. 3d at 431, 892 N.E.2d at 615.

¶ 33 As we previously discussed, a court's primary objective in construing an insurance policy is to ascertain and give effect to the intention of the parties as expressed in the

16

agreement. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 400, 930 N.E.2d 943, 948 (2010). Where the terms of an insurance policy are clear and unambiguous, they must be enforced as written unless doing so would violate public policy. *Schultz*, 237 Ill. 2d at 400, 930 N.E.2d at 948. The public policy of this state is reflected in its constitution, statutes, and judicial decisions. *Schultz*, 237 Ill. 2d at 400, 930 N.E.2d at 948. Policy terms that conflict with a statute are void and unenforceable. *Schultz*, 237 Ill. 2d at 400, 930 N.E.2d at 948.

¶ 34    Our supreme court has acknowledged the legislature's amendment to section 143.13a of the Code, effective January 1, 2008, and its intent to prohibit step-down limits based on status in policies covering private passenger automobiles. 215 ILCS 5/143.13a (West 2008); *Schultz*, 237 Ill. 2d at 408, 930 N.E.2d at 953. In relevant part, section 143.13a provides:

> "Coverage for permissive drivers. Any policy of private passenger automobile insurance must provide the same limits of bodily injury liability, property damage liability, uninsured and underinsured motorist bodily injury, and medical payments coverage to all persons insured under that policy, whether or not an insured person is a named insured or permissive user under the policy. If the policy insures more than one private passenger automobile, the limits available to the permissive user shall be the limits associated with the vehicle used by the permissive user when the loss occurs." 215 ILCS 5/143.13a (West 2008).

¶ 35    We conclude the box truck plaintiff was driving at the time of the accident was not a "private passenger automobile" within the meaning of section 143.13a of the Code. 215

17

ILCS 5/143.13a (West 2008). For this reason, the step-down limits of the policy at issue do not violate Illinois law or public policy.

¶ 36 The policy at issue in this case is a commercial automobile liability policy covering vehicles of a company, namely Davis & Sons. Todd Davis, the president of Davis & Sons, described the vehicle that was driven by plaintiff and involved in the accident as a box truck owned by Davis & Sons used exclusively for transporting goods related to the business of Davis & Sons. Todd Davis further described the truck as containing a separate cargo area walled off from the cab. He also stated the truck's cab had only one seat which was used by the driver, and there were no other passenger seats in the cab.

¶ 37 "A court should not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that the legislature did not intend." *McFatridge v. Madigan*, 2013 IL 113676, ¶ 18, 989 N.E.2d 165. For the above reasons, we find the commercial policy in question is not a "policy of private passenger automobile insurance" under section 143.13a of the Code. 215 ILCS 5/143.13a (West 2008). Accordingly, because the statutory prohibition does not apply to this policy, we conclude the step-down limits do not contravene Illinois law or public policy.

¶ 38                                    CONCLUSION

¶ 39 For the aforementioned reasons, we affirm the judgment of the circuit court of Wayne County.

18

¶ 40   Affirmed.

2017 IL App (5th) 160110

NO. 5-16-0110

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| MICHAEL BRUCE WORLEY, | ) | Appeal from the |
| | ) | Circuit Court of |
|     Plaintiff-Appellee and Cross-Appellant, | ) | Wayne County. |
| | ) | |
| v. | ) | No. 12-L-3 |
| | ) | |
| P. JEAN FENDER, DAVIS & SONS OIL | ) | |
| COMPANY, STATE AUTO PROPERTY & | ) | |
| CASUALTY INSURANCE COMPANY, and | ) | |
| FEDERATED MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
|     Defendants | ) | |
| | ) | Honorable |
| (Federated Mutual Insurance Company, | ) | Larry D. Dunn, |
| Defendant-Appellant and Cross-Appellee). | ) | Judge, presiding. |

_____

**Rule 23 Order Filed:**        March 16, 2017
**Motion to Publish Granted:**   May 15, 2017
**Opinion Filed:**              May 15, 2017

_____

**Justices:**             Honorable Richard P. Goldenhersh, J.

                           Honorable Melissa A. Chapman, J., and
                           Honorable Judy L. Cates, J.,
                           Concur

_____

**Attorneys**        Daniel G. Hasenstab, John P. Cunningham, Brown & James, P.C., Richland
**for**              Plaza I, 525 W. Main Street, Suite 200, Belleville, IL 62220-1547
**Appellant**

_____

**Attorneys**        William P. Gavin, Catherine E. Gavin, Gavin Law Firm, 1 South Church Street,
**for**              Suite 203, Belleville, IL 62220
**Appellee**

_____