2025 IL App (1st) 240905

No. 1-24-0905

Opinion filed April 8, 2025

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MICHAEL AHLGREN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CH 4700 |
| | ) | |
| STONEGATE INSURANCE COMPANY, INC., | ) | Honorable |
| | ) | Clare J. Quish, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE VAN TINE delivered the judgment of the court, with opinion.
Justices Howse and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant Stonegate Insurance Company, Inc. (Stonegate), appeals from the circuit court's grant of summary judgment in favor of plaintiff Michael Ahlgren. The circuit court found that Stonegate had an obligation to provide insurance coverage for an incident in which a vehicle driven by an uninsured motorist, Saul Garcia, struck Ahlgren in a parking lot when he was outside his own vehicle. On appeal, Stonegate argues that Ahlgren was not "using" his insured vehicle at the time of the incident; therefore, no insurance coverage exists. For the following reasons, we reverse and remand for further proceedings consistent with this opinion.

¶ 2                              I. BACKGROUND

¶ 3                     A. Complaint and Insurance Policy

¶ 4     Ahlgren is the owner of a towing company. Stonegate provided automobile insurance for his company. Ahlgren filed a declaratory action against Stonegate seeking coverage for an incident that occurred on May 6, 2021. Ahlgren's complaint alleged that, at approximately 5:15 p.m. that day, he was driving a Chevrolet Silverado pickup truck on State Route 71 in Oswego, Illinois, when Garcia, who was driving a Hyundai Elantra, instigated an altercation on the road. Ahlgren followed Garcia's vehicle into a parking lot and exited his Silverado. He walked approximately 25 steps away from it toward Garcia's vehicle, which was 50 to 60 feet away from the Silverado. As Ahlgren approached Garcia's vehicle, Garcia drove forward and struck Ahlgren, injuring him. Garcia was uninsured. Ahlgren sought a declaration that Stonegate was obligated to provide coverage for this incident pursuant to his policy's uninsured motorist endorsement.

¶ 5     Relevant here, the policy provides that an "[i]nsured" is anyone "*using* with your permission a covered 'auto' you own." (Emphasis added.). The parties agree that the Silverado Ahlgren was driving on the day of the incident was a covered automobile under the policy and that Ahlgren gave himself "permission" to drive his own company truck. They disagree as to whether Ahlgren was "using" the Silverado within the meaning of the policy. The controlling authority on this issue is *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 401-02 (2010), which states that "[o]ne uses an automobile whenever such use is rationally connected to the vehicle for the purpose of providing transportation or satisfying some other related need of the user." (Internal quotation marks omitted.).

¶ 6                          B. Summary Judgment

¶ 7     Both parties moved for summary judgment. Relevant here, Ahlgren argued that he was "using" the Silverado at the time of the incident because his actions were directly connected to that vehicle and his "purpose for exiting his vehicle was to obtain the license plate number and potentially exchange information so that he could make a formal complaint for the injuries sustained to his head." Stonegate contended that Ahlgren was not "using" the Silverado because "[o]btaining information necessary to file a criminal complaint against Garcia for throwing an object that hit Ahlgren ha[d] no 'rational connection' to the Silverado," and Ahlgren did not need to approach Garcia's vehicle on foot to obtain its license plate number anyway. Attached to the summary judgment briefing are transcripts of Ahlgren and Garcia's depositions, as well as surveillance camera video recordings of the part of the incident that occurred in the parking lot.

¶ 8                    1. Ahlgren's Deposition Testimony

¶ 9     Ahlgren testified that on May 6, 2021, he first saw Garcia while both men were driving. Garcia was "hanging out of the driver's window while in motion, his entire body hanging out of the window with two middle fingers in the air screaming and yelling." When they stopped at a red light, Garcia began "throwing stuff from one and a half car lengths behind [Ahlgren] ***, throwing lighters and other items out of his vehicle at [Ahlgren's] vehicle." Ahlgren did not know why Garcia was throwing things at his vehicle. When the light turned green, Garcia pulled up parallel with Ahlgren's vehicle and threw an object through its open driver's side window. The object struck Ahlgren above the left eyebrow and "split open [his] head." Ahlgren did not know what hit him in the face and never recovered that object.[1]

---

[1]Stonegate's counsel repeatedly referred to a bottle striking Ahlgren in the head, but Ahlgren never testified that the object that hit him was a bottle.

¶ 10    Garcia turned into the parking lot of Eastview Academy, and Ahlgren followed him. Ahlgren "was trying to get the license plate first because [he could] tell [Garcia] was trying to run." Ahlgren exited his vehicle without turning off the engine. He then walked around the rear of his vehicle and "tried to look at the rear plate of [Garcia's] vehicle when he put it into reverse. Then [Garcia] backed up far enough into the parking lot where [Ahlgren] couldn't visually see the front license plate, so [Ahlgren] attempted to get close enough to get a good view of the plate." As he approached Garcia's vehicle on foot, Ahlgren yelled, "[Y]ou're going to jail" one time. Ahlgren wanted to obtain Garcia's license plate number "[t]o file a complaint for assault." He saw part of Garcia's license plate number for approximately one second before Garcia's vehicle struck him.

¶ 11                              2. Garcia's Deposition Testimony

¶ 12    Garcia testified that he encountered Ahlgren while driving on May 6, 2021. On the road, Ahlgren's pickup truck cut off Garcia's vehicle, and Garcia threw his hands up and saying, "[W]hat the heck *** you almost hit me, dude." Alhgren responded with "vulgar like hand signals, like flicking [Garcia] off, telling [Garcia] like F you and suck my you know what." At the next red light, Ahlgren exited his vehicle, banged on Garica's driver's side window, and told Garica to fight him. Garcia drove away when the light turned green. At red light after that, Garcia threw a perfume bottle cap through his open driver's side window into Ahlgren's vehicle, hitting him. When the light turned green, Ahlgren blocked Garcia's vehicle by stopping in the middle of the intersection.

¶ 13    Garcia then pulled into the parking lot of Eastview Academy in an attempt to find a "safe haven." Ahlgren followed him into the parking lot and "tri[ed] to ram [Garcia] with [his Silverado]." Ahlgren exited his vehicle and yelled that he was going to kill Garcia. Ahlgren did not ask for Garcia's license plate number. When Ahlgren approached Garcia's vehicle on foot,

Garcia reversed his vehicle because he thought Ahlgren had a weapon and was going to kill him. Garcia told Ahlgren that if he ran toward Garcia's vehicle, Garcia would hit him. Ahlgren ran toward Garcia's vehicle, and Garcia "panicked, stepped on the gas," and struck Ahlgren with his vehicle. When Garcia's vehicle struck Ahlgren, Ahlgren was 400 to 500 feet away from his Silverado. Garcia was arrested as a result of this incident and pled guilty to battery.

¶ 14                      3. Surveillance Video Recordings

¶ 15    There are three video recordings from cameras monitoring the parking lot in which Garcia's vehicle struck Ahlgren; each video depicts a different angle. One video depicts Garcia's vehicle driving into the parking lot and making a 360-degree turn. As Garcia is making the turn, Ahlgren's pickup truck enters the parking lot, brakes briefly to avoid hitting Garcia's vehicle, and then follows closely behind Garcia's vehicle as both vehicles drive out of frame.

¶ 16    Another video shows the next part of the incident. As Garcia's vehicle is turning left, Ahlgren's vehicle turns inside of it and then stops abruptly on Garcia's vehicle's driver's side, perhaps partially blocking it. Ahlgren immediately exits his vehicle, closes the driver's side door, and walks briskly toward Garcia's vehicle. Garcia's vehicle backs away for approximately five car lengths, then stops. Ahlgren continues approaching it on foot. Just as Ahlgren reaches the front of Garcia's vehicle, Garcia's vehicle drives forward, hitting Ahlgren.[2] Ahlgren rolls onto the hood and windshield, and then rolls off the passenger side of Garcia's vehicle and lands on the parking

---

[2]The parties' summary judgment briefing and the trial court's ruling repeatedly claim that Ahlgren walked 50 to 60 feet away from his vehicle. Ahlgren never testified to that. Those figures come from paragraph 12 of his complaint. At oral argument on the cross-motions for summary judgment, both attorneys "accept[ed]" that figure as an "estimate," but no admissible evidence in the summary judgment record supports it. All evidence in support of and in opposition to summary judgment must be admissible at trial. *Complete Conference Coordinators, Inc. v. Kumon North America, Inc.*, 394 Ill. App. 3d 105, 108 (2009).

lot pavement. Garcia drives away. Ahlgren was outside of his vehicle for approximately 13 seconds when Garcia struck him.

¶ 17                              C. The Circuit Court's Ruling

¶ 18    The circuit court granted summary judgment in Ahlgren's favor, finding that Stonegate was obligated to provide coverage. The court described the "undisputed facts" as follows:

> "[Alhgren] first saw Garcia while both of them were driving. Garcia was driving recklessly, hanging out of his vehicle's window with two middle fingers in the air screaming and yelling. A few miles later, after stopping at a red light, Garcia pulled alongside [Ahlgren] and threw an object into [his] open window, striking [him] in the head and injuring him. Garcia then switched lanes, cut off [Ahlgren], and drove into the Eastview Academy parking lot in Oswego, Illinois. While driving his truck, [Ahlgren] followed him. [Ahlgren] parked his truck in the parking lot parallel to Garcia's car and exited his truck.

> [Ahlgren] left his truck running, but did not turn on any emergency hazard lights. [Ahlgren] testified in his deposition that he exited his truck to see Garcia's license plate number so he could file a complaint for assault against [Garcia]. [Ahlgren] also testified that he yelled 'you're going to jail' to Garcia as [Ahlgren] exited his truck.

> Garcia then reversed his vehicle 50-60 feet away from [Ahlgren's] truck. [Ahlgren] took approximately 25 steps towards Garcia's vehicle so [h]e could see Garcia's license plate. Garcias then drove his car into [Ahlgren], severely injuring him."

The court did not address Garcia's deposition testimony. The court's analysis mentioned that the surveillance videos showed that Ahlgren "was out of his truck for only approximately 12 seconds before Garcia struck him with his car."

¶ 19   The court found that Ahlgren was "using" his Silverado because the "entire incident with Garcia, from when they first encounter[ed] each other while driving on the road until Garcia ran over [Ahlgren] with his car, arose out of [Ahlgren's] use of his" Silverado. The court concluded that Ahlgren's "attempt to obtain Garcia's license plate number was thus, rationally connected to the vehicle for the purpose of providing transportation."

¶ 20   Stonegate timely appealed.

¶ 21                                    II. ANALYSIS

¶ 22   Stonegate argues that the circuit court erred by granting summary judgment in Ahlgren's favor because Ahlgren was not "using" his Silverado at the time of this incident.

¶ 23   Summary judgment is warranted when the pleadings, admissions, depositions, and affidavits on file, viewed in the light most favorable to the nonmoving party, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022); *Thounsavath v. State Farm Mutual Automobile Insurance Co.*, 2018 IL 122558, ¶ 15. We review the circuit court's grant of summary judgment *de novo* (*Thounsavath*, 2018 IL 122558, ¶ 16), meaning that we perform the same analysis as the circuit court (*Galarza v. Direct Auto Insurance Co.*, 2022 IL App (1st) 211595, ¶ 33).

¶ 24   The parties agree that the only issue is whether Ahlgren was "using" his Silverado at the time of the incident. If Ahlgren was "using" his Silverado, then Stonegate must provide coverage. If he was not, then there is no coverage. The policy does not define "use" of a vehicle. However,

we need not interpret that term because our supreme court has held that a person "uses" a vehicle when "such use is rationally connected to the vehicle for the purpose of providing transportation or satisfying some other related need of the user." (Internal quotation marks omitted.) *Schultz*, 237 Ill. 2d at 401-02.

¶ 25                                    A. Genuine Disputes of Material Fact

¶ 26    At first glance, whether Ahlgren was "using" the Silverado seems to be a question of law. This is an insurance dispute, and interpretation of the terms of an insurance policy is a question of law. See *Thounsavath*, 2018 IL 122558, ¶ 15. However, the dispositive question is whether Ahlgren's "purpose" in using the Silverado was "providing transportation or satisfying some other related need." See *Schultz*, 237 Ill. 2d at 402. "Purpose" means "intention." Merriam Webster's Collegiate Dictionary (10th ed. 1995); see *People v. Lee*, 214 Ill. 2d 476, 483 (2005) ("purpose" means "intent" and describes a criminal defendant's *mens rea*). A party's intent is a question of fact. *Kornick v. Goodman*, 2023 IL App (2d) 220197, ¶ 23. Summary judgment generally should not be granted when a party's intent is a central issue in the case. *Id.*

¶ 27    Applying the first element of summary judgment under section 2-1005(c), the question is whether there are genuine disputes of material fact as to whether Ahlgren was "using" the Silverado. See 735 ILCS 5/2-1005(c) (West 2022). When reasonable people could draw divergent inferences from the undisputed material facts, or when there is a dispute of material fact, summary judgment should be denied, and the trier of fact should decide the issue. *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 72. "Summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt." *Id.*

¶ 28    At their depositions, Ahlgren and Garcia testified to different versions of events that could support different conclusions about Ahlgren's intent. For example, Ahlgren testified that Garcia was the aggressor, throwing an object through his vehicle's open window for no apparent reason while both men were on the road. By contrast, Garcia claimed that Ahlgren was the aggressor, cutting Garcia off in traffic and demanding to fight him. Ahlgren testified that he followed Garcia into the parking lot and exited his Silverado to obtain Garcia's license plate number to file a criminal complaint against him. But according to Garcia, Ahlgren followed him into the parking lot in an attempt to ram Garcia's vehicle. Ahlgren testified that when he exited his Silverado, he yelled, "[Y]ou're going to jail" at Garcia. But Garcia testified that Ahlgren threatened to kill him. Ahlgren testified that he was approximately a car length away from Garcia's vehicle when he was trying to read that its license plate number. Garcia testified that Ahlgren was 400 to 500 feet away from his Silverado. Ahlgren claimed that he was bleeding when he approached Garcia's vehicle; Garcia did not see blood on Ahlgren's face. Ahlgren claimed that Garcia drove into him intentionally; Garcia testified that he struck Ahlgren in a panicked response to Ahlgren aggressively running toward his vehicle.

¶ 29    Accepting Ahlgren's version of events as true, a rational fact finder could conclude that he was using the Silverado in a manner "rationally connected to the vehicle for the purpose of providing transportation or satisfying some other related need of the user." See *Schultz*, 237 Ill. 2d at 401-02. This incident arose out of an altercation that occurred on the road when both men were actively driving their respective vehicles. A driver addressing an incident on the road by pulling into a parking lot and briefly exiting his vehicle to obtain another vehicle's license plate number

- 9 -

may be rationally connected to transportation-related needs. It is akin to the more typical scenario of motorists pulling to the side of the road to exchange information after an accident.

¶ 30 On the other hand, accepting Garcia's version of events as true, a rational fact finder could infer that Ahlgren was not "using" the Silverado as defined in *Schultz*. A driver pursuing another driver into a parking to ram his vehicle and then leaving his own vehicle to start a physical confrontation is not rationally connected to transportation-related needs. So, whether Ahlgren was "using" the Silverado within the meaning of *Schultz* depends on whether a fact finder accepts his or Garcia's testimony as true. Ahlgren and Garcia's deposition testimony creates disputes of material fact that preclude summary judgment for either party.

¶ 31 We emphasize that we are not deciding whether Alhgren's behavior did or did not in fact constitute "use" of the Silverado under *Schultz*. Rather, we are illustrating how reasonable fact finders could reach opposite conclusions on that issue, which is why summary judgment is inappropriate.

¶ 32 The videos do not resolve these factual disputes such that summary judgment is warranted. They do not depict any part of the incident on the road, so they do not show who was the initial aggressor. The videos have no sound, so they cannot resolve whether Ahlgren threatened to kill Garcia or merely told him he was going to jail. The videos provide no reliable way to measure how far away Ahlgren walked from his vehicle. That said, a reasonable fact finder viewing the videos could interpret Ahlgren's behavior as aggressive and confrontational, suggesting that he intended to attack Garcia, not that he was simply trying to obtain Garcia's license plate number.

¶ 33 We acknowledge that the parties filed cross-motions for summary judgment, which indicates that they agree there are no genuine disputes of material fact. See *Oswald v. Hamer*, 2018

IL 122203, ¶ 9. "However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. The parties may prefer a court to resolve this case as a matter of law based on Ahlgren's version of events.[3] But we cannot ignore the deposition transcripts that the parties chose to submit as part of the summary judgment record. Rather, we must consider the *entire* summary judgment record, including both deposition transcripts. See *Owners Insurance Co. v. Seamless Gutter Corp.*, 2011 IL App (1st) 082924-B, ¶ 50. Ahlgren and Garcia's depositions reveal genuine disputes of material fact about Ahlgren's intent. Accordingly, we reverse the circuit court's grant of summary judgment.

¶ 34                                    B. Judgment as a Matter of Law

¶ 35     We also find that summary judgment is improper because neither party is entitled to judgment as a matter of law. A party seeking summary judgment must establish that it is entitled to summary judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). The movant's right to judgment as a matter of law must be clear and free from doubt. *In re Marriage of Maurice B.H.*, 2012 IL App (1st) 121105, ¶ 17; see *Seymour v. Collins*, 2015 IL 118432, ¶ 42. If we find that neither side is entitled to judgment as a matter of law, we are not obligated to affirm summary judgment in either party's favor. *Pielet*, 2012 IL 112064, ¶ 28.

---

[3]That said, Stonegate's opening brief implicitly adopts Garcia's version of events to some degree. For example, Stonegate argues that Ahlgren exited his Silverado "to confront Garcia." In addition, Stonegate opposed Ahlgren's attempt to block Garcia's deposition as irrelevant to the coverage dispute. Stonegate argued that the surveillance camera video recordings were "grainy and [were] taken from relatively far away, thus making certain key details difficult to discern." Stonegate also contended that it should not be "forced to rely solely on [Ahlgren]'s self-interested version of events" because his "prior inaccurate testimony under oath demonstrates that his recollection of the events is suspect at best or incredible at worst."

¶ 36    There is a small body of case law analyzing "use" of a vehicle for purposes of insurance coverage. *Schultz* is the only binding authority on that issue. The definition of "use" that *Schultz* provides is controlling, but that case's ultimate holding is not dispositive of this case because the facts are not similar. *Schultz* holds that "use" of a vehicle includes riding in it as a passenger. *Schultz*, 237 Ill. 2d at 403. In this case, neither vehicle had a passenger.

¶ 37    Most post-*Schultz* cases involve loading and unloading cargo or passengers, activities that are not at issue in this case. See, *e.g.*, *Menard, Inc. v. Illinois Farmers Insurance Co.*, 2024 IL App (3d) 230431, ¶ 47; *First Chicago Insurance Co. v. My Personal Taxi & Livery, Inc.*, 2019 IL App (1st) 190164, ¶¶ 24-26; *Country Mutual Insurance Co. v. Oehler's Home Care, Inc.*, 2019 IL App (4th) 190080, ¶ 86; *Menard, Inc. v. Country Preferred Insurance Co.*, 2013 IL App (3d) 120340, ¶ 22. One case, *Kim v. State Farm Mutual Automobile Insurance Co.*, 2014 IL App (1st) 131235, ¶¶ 5-6, involved a worker who was struck by a vehicle and killed when he was installing traffic counting devices on a road. That is not similar to the facts of this case either.

¶ 38    Cases decided before *Schultz* offer little guidance because they do not apply *Schultz*'s definition of "use" that governs this case. Also, some of those cases address whether the plaintiffs were "occupying" a vehicle, not whether they were "using" it.[4] See, *e.g.*, *DeSaga v. West Bend Mutual Insurance Co.*, 391 Ill. App. 3d 1062, 1071 (2009); *Mathey v. Country Mutual Insurance Co.*, 321 Ill. App. 3d 805, 806-09 (2001). Other pre-*Schultz* cases involve whether a plaintiff's injuries "arose out of" or were "causally connected to" the ownership, maintenance, or use of a vehicle. See, *e.g.*, *State Farm Mutual Automobile Insurance Co. v. Pfiel*, 304 Ill. App. 3d 831, 835-

---

[4]At oral argument on the cross-motions for summary judgment, the parties agreed that the "occupying" analysis does not apply to this case.

38 (1999); *Aryainejad v. Economy Fire & Casualty Co.*, 278 Ill. App. 3d 1049, 1051-53 (1996). These are different analyses than the *Schultz* test that governs this case.

¶ 39 We have found no Illinois authority, pre- or post-*Schultz*, that addresses whether a driver "uses" a vehicle when he stops and exits the vehicle to obtain the license plate number, or attempts to confront the driver, of another vehicle with which he just had a road rage-like incident. The parties have not identified any such case or even a case that is somewhat similar to that scenario. Therefore, neither party's right to judgment as a matter of law is clear and free from doubt, so neither party is entitled to summary judgment. See *Seymour*, 2015 IL 118432, ¶ 42.

¶ 40 Stonegate argues that *Cohs v. Western States Insurance Co.*, 329 Ill. App. 3d 930 (2002), is "outcome-determinative." That is incorrect. *Cohs* is a pre-*Schultz* case decided by a different panel of this division 23 years ago. "[T]he opinion of one district, division, or panel of the appellate court is not binding on other districts, divisions, or panels." *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008). Moreover, *Cohs* did not involve a confrontation between two motorists. *Cohs* involved a technician who was struck by an underinsured motorist while working on the fuel tanks of a gas station. *Cohs*, 329 Ill. App. 3d at 931-32. In addition, *Cohs* analyzed whether the worker was "occupying" his vehicle when he was injured, not whether he was "using" it. *Id.* at 933.

¶ 41 Ahlgren relies on *DeSaga*, a pre-*Schultz* case decided by the Third District in 2009. As noted above, the issue in *DeSaga* was whether the plaintiff was "occupying" a vehicle, not whether he was "using" it. *DeSaga*, 391 Ill. App. 3d at 1071. Also, *DeSaga* involved a worker who was struck by an underinsured motorist and killed while trying to clear a roadway of metal that fell off his truck. *Id.* at 1064. *DeSaga* did not involve any type of confrontation between two motorists.

- 13 -

¶ 42    To be clear, we do not find that the cases set out above have *absolutely no* precedential value in determining whether Ahlgren was "using" the Silverado. But none of those cases are similar enough to this case to make either party's right to judgment as a matter of law clear and free from doubt. On the contrary, this appears to be a case of first impression in Illinois. Given the unique (and disputed) facts of this case and the lack of authority on this issue, we cannot say that the law clearly mandates one outcome or the other. Accordingly, we reverse the circuit court's grant of summary judgment and remand for further proceedings consistent with this opinion.

¶ 43                                    III. CONCLUSION

¶ 44    The parties purported to agree on an "undisputed" version of events to obtain a summary judgment ruling from the circuit court. But some of those facts, such as the distance Ahlgren walked from his Silverado, were essentially agreements between the attorneys and not supported by the summary judgment record. Furthermore, the parties effectively asked the court to take Ahlgren's version of events as undisputed but provided the court with the deposition of another witness, Garcia, who testified to a significantly different version of events. Because the parties chose to make Garcia's deposition part of the summary judgment record, the circuit court was required to consider it. See *Danhauer v. Danhauer*, 2013 IL App (1st) 123537, ¶ 32; see also *In re Estate of Olenick*, 204 Ill. App. 3d 291, 297-98 (1990) (" 'In ruling upon a motion for summary judgment, the trial court has a duty to consider the entire record to determine whether a genuine issue of material fact exists.' " (quoting *In re Paternity of Smith*, 179 Ill. App. 3d 473, 476-77 (1989))). The court was not free to accept Ahlgren's account as undisputed, as it did. Additionally, the parties' struggles to identify factually similar post-*Schultz* authority on the question of "use" illustrates why neither party's right to judgment as a matter of law is clear and free from doubt. To

put it simply, the parties cannot force this case into being amenable to resolution at summary judgment even if that is what both sides would prefer.

¶ 45   For the foregoing reasons, we reverse the circuit court's grant of summary judgment and remand this matter for further proceedings consistent with this opinion.

¶ 46   Reversed; cause remanded.

*Ahlgren v. Stonegate Insurance Co.*, 2025 IL App (1st) 240905

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-CH-4700; the Hon. Clare J. Quish, Judge, presiding. |
| **Attorneys for Appellant:** | Jonathan L. Schwartz, Donald Patrick Eckler, and Thomas T. Bishop, of Freeman Mathis & Gary, LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Nicholas E. Richardson, of Segal McCambridge Singer & Mahoney Ltd., and Thomas C. Marszewski, of Marszewski & Galvin, both of Chicago, for appellee. |