2026 IL App (1st) 251610-U

No. 1-25-1610

Order filed May 26, 2026

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| GINA ROSSI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 CH 4080 |
| | ) | |
| MICHAEL PEART, | ) | Honorable |
| | ) | David B. Atkins, |
| Defendant-Appellee. | ) | Judge, presiding. |

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We reverse the circuit court's dismissal of plaintiff's complaint seeking a resulting trust and remand for further proceedings because there is a genuine dispute of material fact regarding the parties' intent.

¶ 2     Plaintiff Gina Rossi appeals from the circuit court's order dismissing her complaint seeking a resulting trust under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2024)). For the following reasons, we reverse and remand.

¶ 3                                          I. BACKGROUND

¶ 4      Rossi filed a one-count complaint against defendant Michael Peart. Rossi alleged that she and Peart were engaged in 2015 but never married. In 2015, during their engagement, the parties agreed to buy a $300,000 condominium in downtown Chicago. The parties' intention was that they would "live in the [condominium] together and they would both be on the title." However, due to Peart's "full-time employment and preferable credit score," the parties agreed that Peart would apply for the mortgage and act as the purchaser. The parties also agreed that Rossi would contribute $30,000 for the down payment and that they would add Rossi's name to the title immediately after closing. The parties never intended that Peart would be the sole owner of the condominium. The parties bought the condominium on September 28, 2015. Only Peart's name was on the title and the mortgage. The parties then moved into the condominium together.

¶ 5      For approximately two years, Rossi contributed to mortgage payments and homeowners' association fees until she developed a chronic illness that prevented her from working. During that time, Peart repeatedly ignored Rossi's requests to be added to the condominium's title. In May 2020, the parties' relationship ended, and Rossi moved out. In 2023, Rossi requested that Peart return the $30,000 down payment, but the parties could not reach an agreement. In 2024, Peart listed the condominium for sale. Rossi alleged that a resulting trust arose from her $30,000 contribution to the down payment and requested the court find that she had a 50% interest in the condominium. A resulting trust arises when one person pays or provides consideration for the purchase of a property but allows another person to take title to the property. *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154 (2001).

¶ 6                    A. Section 2-619(a)(9) Motion to Dismiss

¶ 7      Peart filed a motion to dismiss under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2024)). Peart argued that Rossi's contribution of $30,000 to the down payment was a gift, meaning that she never had an ownership interest in the condominium and could not seek a resulting trust. In support of this argument, Peart submitted a document titled "GIFT LETTER AFFIDAVIT" (the gift letter), which both parties signed on August 28, 2015. The gift letter identified Rossi as the donor, Peart as the recipient, and the amount of the gift as $30,000. The gift letter stated that Rossi would "provide an outright gift as described below to assist the recipient in the closing of a real estate loan. The recipient will neither be obligated to repay the principal nor pay interest on this gift at any time." The gift letter identified the address of the condominium and noted that the parties were fiancés. The gift letter was not notarized, and the parties did not sign it under oath.

¶ 8      In her response to the motion to dismiss, Rossi admitted that she signed the gift letter but argued that she "did not intend for her $30,000 contribution to be a gift to Mr. Peart, rather she intended it to be part of the down payment for the purchase of the [condominium] to be owned by both of the parties as they were engaged to be married." Rossi contended that the mortgage lender required her to sign the gift letter and she understood it to be merely "a formality with the bank." Additionally, Rossi argued that (1) she sufficiently pled a claim for a resulting trust because her complaint alleged that the parties' intent was for her to become a co-owner and evidence of the surrounding circumstances corroborated that allegation; (2) even if her $30,000 contribution was a gift, it was a gift conditioned on marriage; and (3) Peart's section 2-619 motion was improper because he "provided no affidavits to demonstrate that the [gift letter was] genuine."

¶ 9    Rossi attached her own affidavit, which restated the allegations of her complaint and included additional facts. Rossi attested that she and Peart agreed to add her name to the condominium's title after closing. The parties' mortgage lender told them that because Rossi "was not a borrower on the loan, in order for [her] to contribute to the down payment, [she] would need to sign a statement denoting the down payment as a gift in consideration of marriage." Rossi attested that she never intended for her $30,000 contribution to be a gift to Peart. The $30,000 was never deposited in Peart's bank account; rather, Rossi "submitted [it] for closing via wire transfer from [her] bank account." Peart, the parties' realtor, Ali Donoghue, and their attorney, Carol Billie Oshana, all knew and agreed that Rossi would become a co-owner of the condominium after closing.

¶ 10    Rossi also attached e-mails and text messages regarding the condominium, which we detail below. In summary, these communications reflect that in late August 2015, the parties, Donoghue, and Oshana discussed Rossi contributing to the down payment as Peart's fiancée and signing the gift letter. Between September 2015 and February 2016, Rossi repeatedly asked Peart and Oshana to add her to the condominium's title.

¶ 11    Peart did not reply or submit any additional evidence.

¶ 12    The circuit court granted Peart's motion to dismiss, reasoning as follows:

> "The court finds the matter should be dismissed, not only on the basis of the [Gift Letter] but on the alleged facts in general. [Rossi] admits that she was never on title, and that although [Peart] allegedly promised to add her thereto he consistently refused to do so. This is not a claim for specific performance or unjust enrichment based on unfulfilled promises, but one to quiet title, claiming [Rossi] *is* (not merely should be) an owner of the

Property. The facts alleged demonstrate that she is not, and if any doubt existed thereto it would be resolved by the undisputed evidence attached to the instant Motion."

The court dismissed Rossi's complaint with prejudice.

¶ 13                                    B. Motion to Reconsider

¶ 14    Rossi filed a motion to reconsider. She argued that Peart's motion did not raise a proper affirmative matter under section 2-619 because it did not admit the allegations of her complaint. Rather, Peart's motion merely disputed whether the parties agreed to add Rossi to the title and advanced Peart's theory that Rossi's $30,000 contribution was a gift. Rossi also contended that even if her $30,000 contribution was a gift, that did not defeat her claim seeking a resulting trust because (1) equity supported a conclusion that she was a co-owner of the condominium; (2) the gift letter was silent as to ownership of the condominium; and (3) the parties were engaged, meaning that the gift was conditioned on marriage. Finally, Rossi argued that the circuit court erred in holding that her name had to be on the condominium's title to seek a resulting trust.

¶ 15    In response, Peart argued that the gift letter was a proper affirmative matter under section 2-619 because it was Rossi's own statement confirming that her $30,000 contribution was a gift, which precluded her from contending otherwise. Peart contended that Rossi signing the gift letter showed she "had no intent to be on the title—otherwise she would not have executed the gift [letter]." Peart argued that Rossi advanced no legal basis that would allow her to "decide, ten years later, that her prior sworn[sic] statement is misunderstood and that she really meant to have an ownership interest in the" condominium.

¶ 16    Rossi's reply essentially reiterated the arguments she raised in her motion to reconsider.

¶ 17    The circuit court denied Rossi's motion to reconsider, finding that Rossi raised "no new facts or law;" rather, she "largely repeat[ed] arguments fully considered and rejected." The court explained that Rossi's only new argument was that the gift letter was not a proper affirmative matter under section 2-619. The court rejected this argument as meritless, finding that the gift letter was "precisely the sort of affirmative matter that defeats a claim which otherwise would be valid."

¶ 18    Rossi timely appealed.

¶ 19                              II. ANALYSIS

¶ 20    This case concerns whether Rossi's contribution of $30,000 toward the condominium's down payment was a gift and, if so, whether that precludes her from seeking a resulting trust as a matter of law.

¶ 21    A resulting trust arises when one party provides funds to purchase a property but allows another party to take title to the property. *Prassa v. Corcoran*, 24 Ill. 2d 288, 291-92 (1962). A resulting trust is based upon the equitable doctrine that the person who provides the funds to purchase property has an ownership interest in the property. See *id.* at 292. A resulting trust exists by operation of law based on the parties' intent, particularly the intent of the person providing the funds to purchase the property. *Id.*; *Dore v. Quezada*, 2017 IL App (1st) 162142, ¶ 22. Payment of consideration creates a presumption that a resulting trust exists. *Hofferkamp v. Brehm*, 273 Ill. App. 3d 263, 272 (1995). However, that presumption may be rebutted with evidence that the party providing funds intended those funds or the property to be a gift. See *Fields v. Fields*, 415 Ill. 324, 329 (1953) ("A resulting trust does not arise where funds advanced are either a gift or a loan."); *Clark v. Clark*, 398 Ill. 592, 605 (1947) ("if he intends the property conveyed to be a gift to the grantee, then no resulting trust will arise"). "A gift is a voluntary, gratuitous transfer of property

by one person to another where the donor manifests an intent to make such a gift and absolutely and irrevocably delivers the property to the donee." (Internal quotation marks omitted.) *Jackson v. DBR Jackson Partnership*, 2016 IL App (3d) 150229, ¶ 15.

¶ 22                                    A. Standard of Review

¶ 23     Peart's section 2-619 motion to dismiss argued that the gift letter was an affirmative matter that defeated Rossi's claim seeking a resulting trust. Rossi argues that the gift letter was not a proper affirmative matter under section 2-619; rather, it merely refuted her complaint's allegation that her intent in contributing the $30,000 was to become a co-owner of the condominium.

¶ 24     A section 2–619 motion to dismiss admits the sufficiency of the complaint and all well-pleaded facts necessary to establish plaintiff's claim. *McIntosh v. Walgreens Boots All., Inc.*, 2019 IL 123626, ¶ 16; *King v. Gerber Realty, Inc.*, 2022 IL App (1st) 211189, ¶ 25. In such a motion, the defendant argues that the plaintiff's claim "is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619 (a)(9) (West 2024). The affirmative matter must either negate the cause of action completely or refute crucial conclusions of law or material fact alleged in the complaint. *Anderson v. Chicago Transit Authority*, 2019 IL App (1st) 181564, ¶ 21. The affirmative matter may not be " 'evidence upon which defendant expects to contest an ultimate fact stated in the complaint.' " *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 34 (quoting *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 121 (2008)). Evidence that merely refutes a well-pled fact in the complaint is not an affirmative matter within the meaning of section 2-619. *Malanowski v. Jabamoni*, 293 Ill. App. 3d 720, 723 (1997).

¶ 25 There is no dispute that Rossi contributed $30,000 toward the down payment. There is also no dispute that the parties never added her name to the condominium's title. The only dispute in this case is whether Rossi intended to give that money to Peart as a gift.

¶ 26 Rossi's complaint alleged that she made the $30,000 contribution to the down payment intending to become a co-owner of the condominium immediately after closing. Peart's section 2-619 motion challenged Rossi's allegation about her intent. The motion argued that the gift letter showed Rossi intended the $30,000 as a gift to Peart. Whether Rossi intended to be added as co-owner of the condominium is elemental to her claim seeking a resulting trust. See *Verbaere v. Community Bank of Homewood-Flossmoor*, 148 Ill. App. 3d 249, 258 (1986). So, evidence that refuted Rossi's allegations regarding her intent (*i.e.*, the gift letter) was not an affirmative matter under section 2-619. See *Malanowski*, 293 Ill. App. 3d at 724. On that basis alone, the circuit erred in granting Peart's section 2-619 motion and we must reverse. See *Smith*, 231 Ill. 2d at 121-22 (negation of essential allegation "does not constitute an affirmative matter"); *Provenzale v. Forister*, 318 Ill. App. 3d 869, 879 (2001) (evidentiary material "may not be submitted for the purpose of contradicting well-pleaded facts in the complaint.").

¶ 27 The proper vehicle for Peart to have taken in challenging the complaint in this case would have been a motion for summary judgment under section 2-1005 (735 ILCS 5/2-1005 (West 2024)). See *Provenzale*, 318 Ill. App. 3d at 879. When a defendant files a section 2–619 motion that argues the plaintiff cannot prove an essential fact of her claim, the court can construe the motion as a motion for summary judgment so long as the plaintiff does not suffer prejudice. *Reynolds*, 2013 IL App (4th) 120139, ¶ 53 (citing, among others, *Malanowski*, 293 Ill. App. 3d at 724). Peart's motion argued that a piece of evidence—the gift letter—established that Rossi

intended her $30,000 contribution as a gift and precluded her from claiming otherwise. A party's intent is a question of fact. *Kornick v. Goodman*, 2023 IL App (2d) 2220197, ¶ 23. So, Peart's motion argued that there was no dispute about a material issue of fact—Rossi's intent—and that he was entitled to judgment as a matter of law because a gift cannot give rise to a resulting trust. That was a summary judgment argument. See 735 ILCS 5/2-1005(c) (West 2024). Rossi responded to that argument in a summary judgment-like fashion. She attempted to create a dispute of fact by submitting her own affidavit, e-mails, and text messages, which she claimed showed her intent to become a co-owner of the condominium, not to give a gift. Rossi had the opportunity to present evidence and argument regarding her intent, so she did not suffer prejudice. Therefore, we construe Peart's section 2-619 motion as a motion for summary judgment. See *Howle v. Aqua Illinois, Inc.*, 2012 IL App (4th) 120207, ¶ 39 (when the parties treat a section 2-619(a)(9) motion like a motion for summary judgment in the circuit court, the appellate court may analyze it as a motion for summary judgment); *Turner v. 1212 S. Michigan Partnership*, 355 Ill. App. 3d 885, 893 (2005) (appellate court addressed an argument the defendants incorrectly raised in a section 2–619(a)(9) motion to dismiss as a section 2–1005 motion for summary judgment).

¶ 28 Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2024). We review a grant of summary judgment *de novo* (*Suburban Real Estate Services, Inc. v. Carlson*, 2022 IL 126935, ¶ 15), meaning we perform the same analysis as the circuit court (*Zweig v. Miller*, 2020 IL App (1st) 191409, ¶ 24). We construe the record strictly against Peart and liberally in Rossi's favor. See *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007).

¶ 29                                            B. Intent

¶ 30    We now consider whether there is a genuine dispute of material fact regarding the parties' intent. The issue of intent is dispositive because if Rossi can establish that she contributed $30,000 toward the down payment with the intent that she would become a co-owner of the condominium, then she may be able to prevail on her claim seeking a resulting trust. See *Clark*, 398 Ill. at 606. By contrast, if Rossi's contribution of $30,000 was a gift, then she cannot seek a resulting trust as a matter of law. See *Judgment Services Corp.*, 321 Ill. App. 3d at 154. Summary judgment is generally not appropriate when a party's intent is a central issue in the case. *Ahlgren v. Stonegate Insurance Co.*, 2025 IL App (1st) 240905, ¶ 26.

¶ 31    The gift letter is evidence that Rossi intended her $30,000 contribution as a gift. Rossi signed the gift letter, which stated that she was "providing an outright gift" and that Peart would "neither be obligated to repay the principal nor pay interest on this gift at any time." The gift letter identifies Rossi as the "Donor," Peart as the "Recipient" and the amount of the gift as $30,000. So, the gift letter is Rossi's own statement that she intended the $30,000 contribution as a gift.

¶ 32    Rossi submitted two pieces of evidence to dispute the gift letter: her affidavit and a series of e-mails and text messages regarding the purchase of the condominium. Rossi's affidavit attested that she and Peart agreed to title the condominium in both of their names and, on the advice of their mortgage lender, agreed to do so after closing. Rossi also attested that she signed the gift letter at the mortgage lender's request, but she never intended the $30,000 to be a gift to Peart. She understood the gift letter "to only be a formality with the bank." The $30,000 never transferred into Peart's bank account; rather, Rossi wired it directly at closing. Rossi also attested that she informed Donoghue and Oshana that she intended to become a co-owner and that the parties would

add her name to the title after closing. These assertions support a conclusion that Rossi's intent in contributing $30,000 was to become a co-owner of the condominium.

¶ 33    Rossi's affidavit was a proper means of opposing Peart's dispositive motion because when responding to a motion for summary judgment, a plaintiff may show a factual dispute by submitting an affidavit "made on the personal knowledge of the affiant[]" and "set[ting] forth with particularity the facts upon which the claim, counterclaim, or defense is based." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013). The affidavit "shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." *Id.* "[I]f, from the document as a whole, it appears that the affidavit is based upon the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial, Rule 191 is satisfied." (Internal quotation marks omitted.) *JPMorgan Chase Bank, National Ass'n v. Ivanov*, 2014 IL App (1st) 133553, ¶ 72. That is the case here. Rossi's affidavit attests to matters within her personal knowledge; namely, her own intentions and her interactions with Peart, Donoghue, and Oshana, regarding the purchase of the condominium. Rossi can testify to these matters; accordingly, Rossi's affidavit creates a genuine dispute of material fact about her intent.

¶ 34    In addition to her affidavit, Rossi submitted e-mails and text messages that were contemporaneous with the gift letter. On August 25, 2015, Peart emailed the mortgage lender, stating "We did make an offer" on the condominium, presumably referring to himself *and* Rossi. The following day, Peart told the lender that Rossi would "be contributing to the down payment, as my fiancée." The lender responded that he would have Rossi sign the gift letter. On September 24, 2015, four days before closing, Rossi and Peart exchanged text messages about Rossi "pay[ing]

30k." Peart said that the parties would "settle up" and "make sure [they] end up 50/50." Rossi asked about adding both parties' names to the title, and Peart responded that she should ask the realtor how to handle that.

¶ 35    On September 28, 2015, October 23, 2015, and February 22, 2016, Rossi contacted Oshana about adding her name to the title. Rossi's repeated requests to be added to the condominium's title suggest that was what she and Peart agreed to and why she contributed $30,000 toward the down payment. And, aside from one e-mail about Rossi signing the gift letter, the parties never discussed her $30,000 contribution as a gift. These messages, when combined with Rossi's affidavit and the gift letter, create a genuine dispute of material fact about the parties' intent. It is possible Rossi intended to give $30,000 as a gift with no expectation of anything in return, as the gift letter says. It is also possible that Rossi contributed $30,000 to the down payment in exchange for becoming a co-owner. A factfinder must decide which scenario is more plausible. See, *e.g.*, *Johannesen v. Eddins*, 2011 IL App (2d) 110108, ¶ 22 (issues of material fact as to defendant's intent precluded dismissal).

¶ 36    Peart argues that we should not allow Rossi to dispute the unambiguous gift letter she signed. We agree that a person should not sign a document that says something she does not actually mean. Doing so creates disputes and litigation, as it did in this case. That said, the gift letter is not a sworn statement or an affidavit. See *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 494 (2002) ("[A]n affidavit must be sworn to, and statements in a writing not sworn to before an authorized person cannot be considered affidavits."). It is simply one of Rossi's several conflicting statements about her intent. Rossi can testify that she intended to become a co-owner and Peart can impeach her with the gift letter. Peart may also be able to introduce the gift letter as

a statement of a party opponent. See Ill. R. Evid. 801(d)(2) (eff. Oct. 15, 2015). Regardless, this issue will ultimately be a credibility contest that a factfinder must resolve. Deciding the issue of Rossi's intent in a dispositive motion was error. See *Ahlgren*, 2025 IL App (1st) 240905, ¶ 33; *Johannesen*, 2011 IL App (2d) 110108, ¶ 22.

¶ 37 Peart also contends that a resulting trust arises when one party provides consideration for the purchase of property, and a gift is not consideration. That may be, but as explained above, there is a genuine dispute of material fact about whether Rossi provided consideration ($30,000 in exchange for becoming a co-owner) or a gift (as the gift letter states). Significantly, Peart cites no case law in which an Illinois appellate court relied on a gift letter in affirming the dismissal of, or a grant of summary judgment against, a claim seeking a resulting trust. We have found no such authority. That is unsurprising because resulting trusts turn on the parties' intent (*Dore*, 2017 IL App (1st) 162142, ¶ 22), and intent is a question of fact that courts generally should not resolve in dispositive motion practice (*Johannesen*, 2011 IL App (2d) 110108, ¶ 22). Accordingly, we reverse the circuit court's judgment.

¶ 38 C. Rossi's Name on the Title

¶ 39 As a final point of clarification, Rossi titled her complaint "Complaint to Quiet Title," and the circuit court found that she failed to state a claim to quiet title because her name never appeared on the condominium's title. It is true that a claim to quiet title requires the plaintiff to have title. *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 52 (2009). However, the relief Rossi sought was a resulting trust. See *In re Haley D.*, 2011 IL 110886, ¶ 67 ("courts should look to what the pleading contains, not what it is called"). Rossi seeking a resulting trust necessarily meant that her name was not on the title. A resulting trust comes into existence by law when a party paid for

property but her name was not on the title. See *United Community Bank v. Prairie State Bank & Trust*, 2012 IL App (4th) 110973, ¶ 50. Accordingly, the circuit court erred in dismissing Rossi's claim for a resulting trust because her name was not on the title.

¶ 40                                   III. CONCLUSION

¶ 41    For the foregoing reasons, we reverse and remand this matter to the circuit court for further proceedings consistent with this decision.

¶ 42    Reversed and remanded.